The STATE of Texas, Appellant,

v.

Jason A. SMITH, Appellee.

No. 14–09–00977–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 10, 2011.

---

Stephen A. Doggett, Richmond, for Appellant.

John F. Healey, Jr., Gail Kikawa McConnell, Richmond, for State.

Panel consists of Justices FROST, BROWN, and CHRISTOPHER.

## OPINION

KEM THOMPSON FROST, Justice.

Appellant, the State of Texas, challenges an adverse pretrial ruling suppressing and excluding expert witness testimony pertaining to dog-scent lineup identification evidence. Finding no error in the trial court's exclusion of this evidence, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A grand jury indicted appellee Jason Alexander Smith for the 2003 offense of murder by intentionally and knowingly shooting the complainant, Daryl Hayes, with a firearm. Upon discovery of the complainant's dead body inside a vehicle, officers used sterile gauze pads to collect scent samples from various locations inside the vehicle, including the backseat and the front passenger seat. Scent samples also were collected from a white t-shirt found on or near the trunk of the vehicle, a set of keys and a "toggle," and a Glock pistol found inside the vehicle. In the investigation that ensued, officers recovered a Smith & Wesson .357 Magnum. Officers believed that the weapon, which they recovered in 2005, was the firearm used in the commission of the charged offense, which occurred in 2003.

On July 7, 2005, Fort Bend County Sheriff's Deputy Keith Pikett conducted a human-scent lineup with three of his bloodhounds. Six individuals, all black males, including Smith stood in positions 1–6. They stood about 25 to 30 feet apart.[1] As part of the lineup, Deputy Pickett "scented"[2] the dogs with the scent samples taken from the vehicle. Two of the dogs were scented using the scent sample taken from the backseat. When Quincy, the first of Deputy Pikett's bloodhounds, was scented with this sample, Quincy indicated the scent belonged to the person standing in position 6. The second bloodhound, James Bond, when scented with the same sample, indicated that the scent belonged to Smith, who stood in position 1. Only one of the bloodhounds was scented with a sample taken from the

---

1. At oral argument, the parties referred to this configuration as a "wagon-wheel lineup."

2. According to Deputy Pikett's testimony at a pre-trial hearing, in his terminology "to

scent" entails opening a sealed plastic bag and allowing a dog to smell a scent sample contained within the bag to see if the dog detects and trails the scent or indicates "no trail."

t-shirt found in the vehicle, and that dog indicated that the scent belonged to Smith. Each of the three bloodhounds indicated that the scent on the .357 firearm belonged to Smith. When Quincy was scented again with the sample taken from the vehicle's backseat, Quincy indicated the scent belonged to Smith (position 1); James Bond was not scented again with the sample from the backseat. When the dogs were scented with other samples taken from the vehicle, the dogs indicated that there was "no trail" and did not identify anyone in the lineup as being associated with the scent.

Smith filed a pre-trial motion for discovery, production, and a *Kelly*[3] hearing on the scent evidence. At the hearing on Smith's motion, conducted on September 12, 2007, Deputy Pikett testified that he was a certified peace officer and had been a canine handler with the Fort Bend Sheriff's Department for nine-and-a-half years. Deputy Pikett described his experience in working with bloodhounds and his dogs' experience in detecting scents, as well as the scent lineup he conducted in July 2005, a procedure which occurred with Smith's legal counsel present. The trial court denied Smith's motion to suppress the scent-lineup evidence.

Smith filed a motion to exclude all testimony and evidence in connection with the scent lineup. At a hearing on April 2, 2009, the trial court addressed Smith's motion and found the scent-lineup evidence admissible and relevant. Several months later, on September 9, 2009, the trial court held a non-evidentiary hearing on Smith's motion to reconsider the ruling on the scent-lineup evidence. In this motion, Smith alleged the following:

- Deputy Pikett has committed perjury related to his education in two other court proceedings;

- Deputy Pikett's scent discrimination lineups have been proven wrong in other cases;

- Deputy Pikett has been ruled unreliable by another trial court of the same jurisdiction; and

- Dog-scent evidence has been proven wrong and unreliable in other jurisdictions in the country.

In support of his motion, Smith offered a bench memorandum with exhibits attached, but the trial court indicated that it was considering only legal arguments at the hearing and no testimony or other evidence was presented. The trial court orally granted Smith's motion for reconsideration and ruled that the scent-lineup evidence would be excluded, effectively setting aside the court's previous ruling of September 12, 2007.

In response to the State's request, the trial court entered the following findings of fact from the September 12, 2007 hearing:

1. Keith Pikett testified that there was a possible cross-contamination of the scents in the lineup in question;

2. Keith Pikett did not run a "blind" scent lineup in the instant case without the defendant;

3. Keith Pikett does not keep complete records on the scent lineups that his dogs have participated in;

4. Keith Pikett's training records regarding the dog's training are incomplete;

5. Keith Pikett's failure to maintain records makes it difficult to determine accuracy or error rates;

6. Keith Pikett's "records" were not subject to peer review;

---

**3.** *Kelly v. State,* 824 S.W.2d 568, 573 (Tex. Crim.App.1992).

7. Keith Pikett failed to follow up on the dispositions of cases in which his dogs participated;

8. Keith Pikett failed to perform validation testing on his dogs during scent lineups;

9. Keith Pikett testified that no one is reviewing his work;

10. The bloodhound dogs in question are not certified and there is no recognized industry standard on bloodhounds and no certification program for bloodhounds;

11. While the idea that bloodhounds can track and identify scents is accepted as valid, there is no clearly accepted method for conducting scent lineups;

12. No literature was offered by the State in support of the manner in which the scent lineup in question was conducted;

13. No independent evidence was presented by the State regarding the potential rate of error;

14. No evidence was presented by the State regarding the availability of other experts to test and evaluate the manner in which the scent lineup in question was conducted;

15. The defense presented evidence that the dogs in question could be intentionally or unintentionally influenced by the dog handler because the manner in which the scent lineup in question was conducted;

16. There was no showing that the scent lineup results could be duplicated by others following the same methods.

The trial court offered the following conclusion of law: "Keith Pikett's methods in this case were not shown to be sufficiently reliable to allow his testimony to be admitted, and therefore Keith Pikett will not be allowed to testify as an expert."

The trial court entered an order on October 23, 2009, excluding the testimony of Deputy Pikett. The State filed a motion to reconsider the ruling and provided documents for support. The trial court denied the State's motion. The State now appeals, asserting that the trial court erred in excluding Deputy Pikett's testimony regarding the scent lineup.

### ANALYSIS

[1–4] We review a trial court's ruling on the admissibility of scientific evidence under an abuse-of-discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App.2000). The trial court is the sole judge of the weight and credibility of the evidence presented at the suppression hearing. *See Winston v. State*, 78 S.W.3d 522, 525 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (citing *Weatherred*, 15 S.W.3d at 542). As a reviewing court, we consider the trial court's ruling in light of the evidence presented at the time of the trial court's ruling.[4] *See Weatherred*, 15 S.W.3d at 542. A reviewing court must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* We consider whether the trial court acted without reference to guiding rules or principles or whether the trial

4. Because the appended materials attached to Smith's appellate brief are not part of the appellate record and were not presented to the trial court at the time of the trial court's ruling, we do not consider these documents in our review. *See Ramirez v. State*, 104 S.W.3d 549, 551 n. 9 (Tex.Crim.App.2003) (providing that appellate record cannot be supplemented with evidence not presented to trial court). Likewise, because the trial court did not accept evidence at the September 9, 2009 hearing on Smith's motion to reconsider, we do not consider the supporting materials attached to Smith's bench memorandum. *See id.*

court acted arbitrarily or unreasonably in so ruling. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990) (op. on reh'g).

### Did the trial court err in excluding the canine handler's testimony?

In its first issue, the State asserts the trial court erred in excluding Deputy Pikett's testimony without reference to the rules and principles set forth in this court's opinion in *Winston v. State*, in which a prior panel concluded the trial court did not abuse its discretion in admitting testimony of the same canine handler regarding an accused's identification during a dog-scent lineup. *See* 78 S.W.3d at 529.

■ Texas Rule of Evidence 702, entitled "Testimony by Experts," governs the admission of expert testimony, and provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may

testify thereto in the form of an opinion or otherwise.

Tex.R. Evid. 702; *see Winston*, 78 S.W.3d at 525. A proponent of scientific evidence must show by clear and convincing proof that the proffered evidence is sufficiently relevant and reliable to assist a factfinder in determining a fact issue or understanding the evidence. *See Weatherred*, 15 S.W.3d at 542.

■ In assessing the reliability of scientific evidence, the Texas Court of Criminal Appeals has set forth a three-prong reliability test and identified seven non-exclusive factors for consideration.[5] *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App. 1992); *see Winston*, 78 S.W.3d at 525. But, because, as in this case, interpretation of a dog's reaction to a scent lineup is based on training and experience, and not scientific principles, we apply the less rigorous test set forth in the *Nenno* case.[6] *See Winston*, 78 S.W.3d at 526 (applying criteria set forth in *Nenno v. State*, 970 S.W.2d 549, 560–61 (Tex.Crim.App.1998)). When addressing fields of expertise that are grounded in experience and training

---

**5.** The three-part reliability test contemplates whether (1) a scientific theory is valid, (2) application of the theory is valid, and (3) the technique has been properly applied. *See Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim. App.1992). Factors affecting a trial court's determination of reliability include the following non-exclusive factors: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained, (2) the qualifications of the expert(s) testifying, (3) the existence of literature supporting or rejecting the underlying scientific theory and technique, (4) the potential rate of error of the technique, (5) the availability of other experts to test and evaluate the technique, (6) the clarity with which the underlying scientific technique can be explained to the court, and (7) the experience and skill of the person(s) who applied the technique on the occasion in question. *Id.; see Winston*, 78 S.W.3d at 526 n. 2.

**6.** The Texas Court of Criminal Appeals recently held that (1) scent-discrimination lineups are separate and distinct from dog-scent tracking evidence, and (2) scent-discrimination lineups, when used alone or as primary evidence, are legally insufficient to support a conviction. *See Winfrey v. State*, 323 S.W.3d 875, 883–84 (Tex.Crim.App.2010). In doing so, the *Winfrey* court referred to " 'scientific principles underlying dog scenting.' " *See id.* at 882–83 (quoting Andrew E. Taslitz, *Does the Cold Nose Know? The Unscientific Myth of Dog Scenting*, 42 Hastings L.J. 15, 42 (1990)). However, as noted by Judge Cochran in her concurring opinion, the *Winfrey* court addressed only whether the evidence was legally sufficient to support the conviction and did not address the admissibility of dog-scent lineup evidence under either *Kelly v. State or Nenno v. State*. *See id.* at 885 (Cochran, J., concurring).

rather than scientific methods, the less-rigorous standard for assessing reliability applies. Applying this standard, we consider whether (1) the field of expertise is a legitimate one, (2) the subject matter of the expert, in his testimony, is within the scope of the field, and (3) the expert's testimony properly relies upon or utilizes the principles involved in the field. *See* *Nenno*, 970 S.W.2d at 561; *Winston*, 78 S.W.3d at 526 (applying standard to scent lineups).

In *Winston*, this court concluded that the scent lineups were a legitimate field of expertise, stating "there is little distinction between a scent lineup and a situation where a dog is required to track an individual's scent." *Winston*, 78 S.W.3d at 526. This position was rejected in *Winfrey v. State*, in which the Texas Court of Criminal Appeals noted there are "significant scientific differences among the various uses of scenting." *Winfrey*, 323 S.W.3d at 883 (quoting Andrew E. Taslitz, *Does the Cold Nose Know? The Unscientific Myth of Dog Scenting*, 42 Hastings L.J. 15, 42 (1990)). For purposes of this case, even were we to presume without deciding that the field is a legitimate area of expertise, the State has failed to carry its burden in establishing the reliability and relevancy of Deputy Pikett's testimony. *See Weatherred*, 15 S.W.3d at 542.

■ As a proponent of the expert testimony, the State had the burden of proving by clear and convincing evidence that Deputy Pikett's testimony was relevant and reliable. *See id.* Although the State attempted to carry that burden, the State offered only Deputy Pikett's testimony and no other evidence. *See id.* at 542–43 & n. 6. Our scrutiny of Deputy Pikett's testimony reveals that although he claims his dogs are reliable and accurate in identifying scents, he has failed to produce or cite any evidence supporting his claims. *See id.* at 542–43 (involving expert who claimed to have carried out extensive research on reliability of eyewitness identification, yet failed to produce or name any studies, researchers, or writings in question). Deputy Pikett referred to his records for support, and these records were available to Smith's legal counsel. But Deputy Pikett's testimony reveals that though he maintains some records for training and practice lineups, these records are incomplete as are his records verifying the outcome of cases in which his dogs have identified suspects and the records of the dogs' success rates. Given the evidence before the trial court at the September 12, 2007 hearing, the trial judge reasonably could have concluded that the State had failed to carry its burden of showing that the proffered expert testimony was reliable. Therefore, the trial court did not abuse its discretion in excluding Deputy Pikett's testimony on Smith's motion to reconsider the court's previous ruling.[7] Accordingly, we overrule the State's first issue.

### Did the trial court err in treating the canine handler's testimony as scientific evidence?

In its second issue, the State asserts that the trial court erred in holding the

---

7. In its fourth issue, the State seeks reversal and argues in the alternative that it carried the burden of establishing by a preponderance of the evidence that Deputy Pikett was qualified, citing *Kelly*, 824 S.W.2d at 573, apparently for the proposition that the burden of persuasion is unclear for scientific evidence that is not novel. We have determined that Deputy Pikett's testimony did not satisfy the less-rigorous standard set forth in *Nenno* for admitting expert testimony. Having failed to meet the less-rigorous standard, Deputy Pikett's testimony, therefore, would not have satisfied the criteria set forth in *Kelly*. For this reason, we overrule the State's fourth issue. We decline to reverse and remand on these grounds as the State requests in its reply brief.

September 2007 evidentiary hearing under the less-rigorous standard in *Nenno* and then improperly excluded Deputy Pikett's testimony under the *Kelly* factors. For support, the State points to the trial court's findings of fact as showing that the trial court improperly held the State to the higher standard set forth in *Kelly*. According to the State, the facts underlying Deputy Pikett's testimony are materially indistinguishable from the facts referred to in *Winston*, in which Deputy Pikett's expert testimony was admitted.

The State refers to findings 6, 9, 12, and 14 as relating to the absence of peer review and claims that this deficiency affects the weight, and not admissibility, of evidence. In *Winston*, the two recognized experts in the field of bloodhound training witnessed Deputy Pikett in action and approved his techniques and recommended him to others. *See Winston*, 78 S.W.3d at 527. Furthermore, in *Winston*, unlike the case under review, Deputy Pikett testified that in conducting a scent lineup the procedure he used in the scent-pad lineup was consistent with the procedure approved by the National Police Bloodhound Association manual. *See id.* at 528. As such, the evidence of peer review was present in *Winston*. *See generally id.* at 527, 528. Consequently, *Winston* is factually distinguishable from the case under review.

The State points to findings of fact 5, 7, and 13 as relating to lack of evidence of an error rate, and claims that error rate is not an appropriate measure of reliability. The State cites no legal authority for this assertion. *See* Tex.R.App. P. 38.1(f). Moreover, this court in *Winston* considered the dogs' accuracy and success in determining whether Deputy Pikett's testimony was reliable. *See Winston*, 78 S.W.3d at 528 (noting one example of the dogs' success, referring to testimony that Deputy Pikett's dogs have "never misidentified a scent in a scent lineup," and indi-

cating that "Deputy Pikett provided documentation detailing the success of every trail and scent lineup involving his dogs").

The State refers to findings 10, 11, 14, and 16 as relating to "clearly accepted methods," certification; and duplication, and asserts that these factors are not appropriate measures of reliability. Although there is no requirement of certification for an expert's testimony to be deemed reliable under *Nenno*, Deputy Pikett testified that the industry standard is based on the dogs' performance and records indicating success rates; unlike the facts in *Winston*, in the case under review Deputy Pikett had no such records of success rates to verify the reliability of his testimony nor did he have records of his procedures or order of the dogs in the lineup at issue. *See id.* at 528 (indicating that Deputy Pikett provided documentation of his success). Also, unlike the facts in *Winston*, the record in this case shows that Deputy Pikett testified that he used multiple dogs and ran multiple tests, contrary to expert recommendations and accepted methods. *See id.* (involving approval of Deputy Pikett's method for scent-pad lineup by the National Police Bloodhound Association manual). Smith's expert witness explained how using multiple dogs can create an unwanted pattern for the dogs or trainer.

The State's contentions regarding this second issue lack merit because, as explained, *Winston* is factually distinguishable. Moreover, the Texas Court of Criminal Appeals has not foreclosed on application of hard science methods of validation, such as assessing the potential rate of error or subjecting a theory to peer review, for testing the reliability of fields of expertise outside of hard science in appropriate cases. *See Nenno*, 970 S.W.2d at 561 & n. 9; *see, e.g., Winston,*

78 S.W.3d at 527–29 (involving some peer review via approval of techniques by other experts and evidence of dogs' success in identification). Therefore, we overrule the State's second issue.

**Did the trial court err by determining evidentiary weight and credibility when it excluded the canine handler's testimony?**

In its third issue, the State asserts that in excluding Deputy Pikett's testimony, the trial court improperly invaded the province of the jury. The State alleges that as evidenced by the trial court's findings of fact, the trial court resolved issues of credibility instead of resolving whether the evidence was reliable.

When a trial court makes explicit findings of fact in ruling on a motion to suppress, a reviewing court views the evidence in the light most favorable to the trial court's ruling and determines whether the evidence, when viewed in that light, supports the fact findings. *State v. Kelly,* 204 S.W.3d 808, 818 (Tex.Crim.App.2006). At a suppression hearing, the trial court is the sole judge of the weight and credibility of the evidence presented. *See Winston,* 78 S.W.3d at 525. The reviewing court reviews the trial court's legal ruling de novo unless the explicit fact findings, as supported by the record, are also dispositive of the legal ruling. *Kelly,* 204 S.W.3d at 818. Unless the trial court abused its discretion by making a finding that is not supported by the record, we will defer to the trial court's fact findings and not disturb those findings on appeal. *See Cantu v. State,* 817 S.W.2d 74, 77 (Tex.Crim.App. 1991).

Issues of credibility and reliability are not the same. *See Vela v. State,* 209 S.W.3d 128, 134 (Tex.Crim.App.2006). A jury should evaluate a witness's credibility, but unreliable evidence should never reach the jury. *See id.* at 135–36. As a gatekeeper, the trial court is tasked with determining how the reliability of particular testimony is to be assessed. *See id.* at 134. Although an inquiry as to reliability is flexible, the proponent of the evidence must establish some foundation for the reliability of an expert's opinion. *Id.* Reliability centers on principles and methodology and not on the expert's conclusions generated by those principles or methodology. *See id.* at 136 (citing *Daubert v. Merell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 595, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). A trial court should not admit an expert's opinion if that opinion is connected to existing data only by the expert's own assertions. *Id.* A trial court properly may conclude that there is too large of an analytical gap between the data and the expert's proffered opinion. *Id.* Proper deference should be given to a trial court's ruling. *Id.*

The State claims that the following findings of fact are not supported by the record: finding 1, involving possible cross-contamination; findings 3 and 4, which relate to incomplete records; and finding 8, relating to validation testing.

The record reflects that when Deputy Pikett testified about his dog Quincy's identification of the person in position 6 as the scent Quincy detected from the scent sample taken from the backseat of the vehicle, Deputy Pikett expressly attributed that misidentification to an issue of cross-contamination when Deputy Pikett learned Smith and the person in position 6 were allowed to commingle at the jail before arriving for the lineup. Deputy Pikett surmised that the Smith could have transferred his scent to the other man by shaking hands, giving a high five, bumping chests, or similar physical contact. The record supports the trial court's finding on this issue.

The State contends that in making its finding that there was no "blind" scent lineup conducted without Smith, the trial

court disregarded evidence that Deputy Pikett conducted a subsequent scent lineup with Smith's co-defendant and without Smith, in which the dogs indicated "no trail" and did not identify anyone in the lineup as leaving a scent on the .357 firearm. Deputy Pikett indicated that he keeps the process simple and does not conduct a "double blind" lineup. Furthermore, the subsequent lineup with the co-defendant differed from Smith's lineup in a number of ways: it occurred a couple of weeks later; it involved only two of the dogs, and Deputy Pikett did not identify which dogs participated in the subsequent lineup; Deputy Pikett scented the dogs with only the .357 firearm, but did not use the scent pads collected from the vehicle, which caused Quincy's purported misidentification; Deputy Pikett could not recall whether the dogs were scented off of the firearm itself or a scent pad collected from the firearm; and there is no indication that the person in position 6, who was purportedly misidentified by Quincy in Smith's lineup, was present in the subsequent lineup with the co-defendant. Given Quincy's misidentification in the lineup at issue, Deputy Pikett's subsequent lineup without Smith, conducted weeks later, could not confirm whether his dogs were accurate in their identification of Smith.

The State also asserts that Deputy Pikett could not have influenced his dogs in their identification of Smith because he did not know in which position Smith stood; yet Deputy Pikett's testimony reflected that he helped collect scent samples from the vehicle in 2003, had access to evidence and Smith's case file, set up the lineup, and conducted the lineup. The record supports the trial court's finding.

The trial court's findings regarding Deputy Pikett's records are likewise supported by Deputy Pikett's testimony that his daily training logs, records of practice lineups, records or other evidence verifying the outcome of cases in which his dogs have identified suspects, and records of the dogs' success rates were not complete.

The State asserts that the record shows Deputy Pikett conducted validation testing, including in Smith's lineup, contrary to the trial court's finding 8. According to the record, Deputy Pikett testified that he did not run a blind test to validate the accuracy of dogs' original identification of Smith. Deputy Pikett cited his science background to "keep it simple, stupid, and get out of all that crap," when others tried to complicate the process. The record supports the trial court's finding.

The State argues alternatively that the trial court's findings 6, 9, 14, and 16, regarding peer review were not supported by the record. As discussed above, Deputy Pikett testified that his records were not complete as to daily training logs, records of practice lineups, records or other evidence verifying the outcome of cases, and records of success rates; therefore, these records were not complete or subject to peer review. Deputy Pikett referred to keeping some outcomes in his head, which were not available for peer review. According to the record, Deputy Pikett offered conflicting testimony about whether his methods in this case have been reviewed or approved by others. Likewise, according to the record, the State did not offer any other evidence in support of Deputy Pikett's testimony or that the lineup results could be duplicated—especially in light of Deputy Pikett's testimony that he uses multiple dogs or multiple "runs" contrary to what others do or that others are "making the process incredibly complex" when he is "trying to make it incredibly simple." The record supports the trial court's findings.

Finally, the State refers to finding 15 pertaining to Smith's expert testimony about possible handler influence during the scent lineup and asserts that this finding

affected the weight to be given the evidence, but not the admissibility of the evidence. Arguably, this evidence could have affected the trial court's decision in determining the reliability of the methods and principles used by Deputy Pikett, especially when the State offered no other evidence supporting the reliability of Deputy Pikett's methods.

The trial court's findings are supported by the record. In excluding Deputy Pikett's testimony as being unreliable, the trial court could have concluded that there was too large of an analytical gap between the data offered and Deputy Pikett's proffered opinion. *See Vela,* 209 S.W.3d at 136. A trial court should not admit expert testimony that is connected to existing data only by the expert's own assertions. *See id.* Unreliable evidence should not reach the jury. *See id.* at 135–36. Deferring, as we must, to the trial court's findings, we conclude the trial court did not abuse its discretion in excluding Deputy Pikett's testimony. We overrule the State's third issue.

The trial court's order is affirmed.