Affirmed and Memorandum Opinion filed April 21, 2011.



 



In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00398-CR



 

XAVIER POWELL, Appellant

V.

THE STATE OF TEXAS, Appellee

 



On Appeal from the 268th
District Court

Fort Bend County, Texas

Trial Court Cause No. 48857



 

MEMORANDUM OPINION

             A jury
convicted appellant, Xavier Powell, of murder and assessed punishment at fifty
years’ confinement.  In his sole issue, appellant contends the trial court
erred by admitting an officer’s testimony regarding a dog-scent lineup which implicated
appellant in the offense.  We affirm.

Background

According
to the State’s evidence, on the evening of February 9, 2008, the driver of a
car in which appellant was a passenger chased another vehicle in which the complainant
was a passenger.  There was a history of “bad blood” between the occupants of
these vehicles, which escalated because of a confrontation earlier that day.  Before
the chase, appellant retrieved an assault rifle from his home.  During the
chase, appellant wrapped a white t-shirt around his face, “hung out” a car window,
and fired multiple shots at the other vehicle.  One shot struck the
complainant’s head, causing his death.

            An
investigating police officer found eight spent cartridge casings and a white
t-shirt at the scene.  Using three bloodhounds, Fort Bend County Deputy Keith
Pikett, a canine handler, conducted separate scent lineups on these items: one using
appellant’s scent and another using the scent of an accomplice who had also
been an occupant in appellant’s vehicle.  All three dogs alerted to appellant’s
scent, but not the accomplice’s scent, as present on the casings and t-shirt.

            Pursuant to
appellant’s request, the trial court held a hearing outside the jury’s presence
for the State to prove admissibility of Deputy Pikett’s expert testimony. 
After hearing the proffered testimony, the court overruled appellant’s
objection and allowed Deputy Pikett to testify in front of the jury regarding
the lineup process and results.

Analysis

            In his sole
issue, appellant contends the trial court erred by admitting Deputy Pikett’s
testimony.  We review a trial court’s ruling on admissibility of scientific evidence
under an abuse-of-discretion standard.  See Weatherred v. State, 15 S.W.3d 540,
542 (Tex. Crim. App. 2000).  We review the trial court’s ruling in light of the evidence that was
before the court at the time of the ruling.  Id.  We must uphold the ruling if it was
within the zone of reasonable disagreement.  Id.

Texas Rule of Evidence 702, governing admission of expert
testimony, provides,

If scientific, technical or other specialized
knowledge will assist the trier of fact to understand the evidence or to
determine a fact in issue, a witness qualified as an expert by knowledge,
skill, experience, training, or education may testify thereto in the form of an
opinion or otherwise.

 

Tex. R. Evid. 702.  A proponent of scientific evidence must show by clear and
convincing proof that the proffered evidence is sufficiently relevant and
reliable to assist a factfinder in determining a fact issue or understanding
the evidence.  See Weatherred, 15 S.W.3d at 542; State v. Smith, No. 14-09-00977-CR, --- S.W.3d ---,
2011 WL 480600, at *3 (Tex. App.—Houston [14th Dist.] Feb. 10, 2011, no pet.
h.).  Only reliability of the proffered evidence is at issue in the present
case.

The Texas Court of Criminal Appeals has prescribed three
criteria for assessing reliability of scientific evidence and identified seven
non-exclusive factors for consideration.  Kelly v. State, 824 S.W.2d 568, 573
(Tex. Crim. App. 1992); see Winston v. State, 78 S.W.3d 522, 525
(Tex. App.—Houston [14th Dist.] 2002, pet. ref’d).[1]
 However, because interpretation of a dog’s reaction to a scent lineup is based
on training and experience rather than scientific principles, we apply the “less
rigorous” test set forth in Nenno v. State, 970 S.W.2d 549, 561
(Tex. Crim. App. 1998), overruled on other grounds by State v. Terrazas, 4 S.W.3d 720 (Tex. Crim.
App. 1999).  See Winston, 78 S.W.3d at 525–26 (applying Nenno standard to admissibility
of dog-scent lineups);
see also Smith, ---
S.W.3d ---, 2011 WL 480600, at *3 (same).  Under this standard, a court
considers whether (1) the field of expertise is legitimate, (2) the subject
matter of the expert’s testimony is within the scope of the field, and (3) the
expert’s testimony properly relies on or utilizes the principles involved in
the field.  Nenno, 970 S.W.2d at 561; Winston, 78 S.W.3d at 526; see also Smith, --- S.W.3d ---, 2011 WL 480600, at
*3.

The trial court’s comments at the hearing reflect it applied
the Nenno standard.  As we construe appellant’s brief, he challenges
only the court’s finding on the third Nenno prong.  With respect to this
prong, the trial court announced an oral finding that the lineup was performed
“pursuant to accepted standards.”

In Winston, when applying the Nenno standard to
dog-scent lineups, our court set forth three factors for a court to consider when
deciding whether the third Nenno prong has been satisfied: (1)
qualifications of the particular trainer; (2) qualifications of the particular
dog; and (3) objectivity of the lineup.  Winston, 78 S.W.3d at 527.  Appellant challenges only the trial court’s implicit decision
relative to this third factor.[2]

Because
appellant presents no challenge to Deputy Pikett’s expertise, we will not discuss
the portion of his testimony explaining his qualifications.  After outlining
his qualifications, Deputy Pikett described the process of a scent lineup.  He typically
obtains six scent samples by touching each person, including the suspect, with
a gauze pad.  He also uses a gauze pad to obtain a scent sample from an evidentiary
item collected at the crime scene.  Deputy Pickett does not personally place the
samples for a lineup or watch the placement; rather, another officer places them,
and Deputy Pikett then leads the dogs to each sample.  In this case, Inspector
Oglesby, another bloodhound handler, placed the samples and then videotaped the
process while Deputy Pikett led the dogs to each sample.

            To challenge objectivity
of the lineup, appellant relies on Deputy Pikett’s testimony regarding measures
taken to prevent subliminally cuing the dogs.  On direct examination, Deputy
Pikett explained the reason he does not personally place samples for the lineup
or know which sample contains the suspect’s scent: as the officer who will
subsequently lead the dogs to the samples, he wishes to avoid subliminally cuing
them to a particular sample.  On cross-examination, Deputy Pikett seemed to
clarify that he does not personally believe dogs can be cued but avoids placing
the samples to prevent any accusation of subliminal cuing.  Deputy Pikett
agreed the National
Police Bloodhound Association advises in its procedure manual that different
officers should place the samples and lead the dogs thereto; but he suggested this recommendation
was included to avoid accusations by defense
counsel that an officer subliminally
cued the dogs.

Appellant contends objectivity of the
lineup was compromised because Deputy Pikett raised the possibility of
subliminal cuing and, despite his subsequent protestation, the association
recognizes this possibility.  Appellant did not present the association’s manual
at trial, and it is not part of the record.  Thus, there was no evidence the
association included the recommendation because it actually believes cuing is
possible.  Nonetheless, Deputy Pikett’s testimony shows he did follow the
recommendation, irrespective of whether subliminal cuing is actually possible.

Apparently, appellant’s primary contention
is that Inspector Oglesby, who did place the samples, might have subliminally
cued the dogs to appellant’s sample.  However, appellant cites no evidence
indicating an officer who does not lead the dogs to the samples can nonetheless
subliminally cue them to the suspect’s sample.  In fact, Deputy Pikett opined that
Inspector Oglesby could not cue the dogs because, after placing the samples, he
stood across the room videotaping the process while the dogs were led to the
samples.  Moreover, the only evidence pertaining to the association’s
recommendations was advice that different officers should place the samples and
lead the dogs thereto—the procedure followed in this case.  Appellant cites no evidence
of a requirement or recommendation that the officer who places the samples should
then abstain from any further participation in the process.  To the
contrary, Deputy Pikett testified, “It doesn’t say you can’t have anybody at
the location who doesn’t know where the person is.”

In sum, the trial court did not abuse
its discretion by finding Deputy Pikett properly “relie[d] on or utilize[d] the
principles involved in the field,” as required under the third Nenno
prong, and finding, relative to the pertinent Winston factor for
evaluating the third Nenno prong, the lineup was objective.

We overrule appellant’s sole issue
and affirm the trial court’s judgment.

 

 

                                                            

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

Panel consists of Justices Anderson, Seymore,
and McCally.

 

Do Not Publish — Tex. R. App. P. 47.2(b).

 









[1]
The three criteria are (1) a scientific theory is valid, (2) application of the
theory is valid, and (3) the technique has been properly applied.  Kelly, 824 S.W.2d at 573. 
The non-exclusive factors affecting a court’s determination of reliability
include (1) the extent to which the underlying scientific theory and technique
are accepted as valid by the relevant scientific community, if such a community
can be ascertained, (2) qualifications of the expert(s) testifying, (3)
existence of literature supporting or rejecting the underlying scientific
theory and technique, (4) potential rate of error of the technique, (5)
availability of other experts to test and evaluate the technique, (6) the clarity
with which the underlying scientific technique can be explained to the court,
and (7) experience and skill of the person(s) who applied the technique on the
occasion in question.  Id.; see Winston, 78 S.W.3d at 525 n.2.

 





[2]
As our court recently recognized, the Winston
court concluded that scent lineups are a legitimate field
of expertise, stating “there is little distinction between a scent
lineup and a situation where a dog is required to track
an individual’s scent.”  Smith, --- S.W.3d ---,
2011 WL 480600, at *4  (quoting Winston, 78 S.W.3d at 527). 
The Smith court also recognized that, since Winston, the Texas
Court of Criminal Appeals has noted there are “significant scientific
differences among the various uses of scenting.”   Id. (quoting Winfrey
v. State, 323 S.W.3d 875, 883 ((Tex. Crim. App. 2010), which quoted Andrew
E. Taslitz, Does the Cold Nose Know? The Unscientific Myth of Dog Scenting, 42
Hastings L.J. 15, 42 (1990)). 
However, the Winfrey court addressed only whether dog-scent
lineup evidence is legally sufficient to support a conviction and not its admissibility
under Kelly or Nenno.  See generally Winfrey,
323 S.W.3d 875.  We need not decide whether the field is a legitimate area of
expertise because appellant raises no issue on overall legitimacy of the field
(the first Nenno prong) and instead challenges only the trial court’s
finding on the third Nenno prong relative to procedures employed in this
particular case.