**Affirmed and Memorandum Opinion filed October 27, 2020.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-19-00330-CR**
**NO. 14-19-00331-CR**

---

**CLINTON JEROME FRANKLIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Cause Nos. 17-CR-1617 & 17-CR-1618**

---

## MEMORANDUM OPINION

Appellant, Clinton Jerome Franklin, appeals his convictions for possession of a controlled substance in cause number 17-CR1617 (14-19-00330-CR) and evading arrest/detention with a vehicle in cause number 17-CR1618 (14-19-00331-CR). Appellant contends the trial court erred by denying his motion to suppress evidence found during an inventory search because his "initial detention was

unlawful." We affirm.

## BACKGROUND

Appellant was indicted for possession of a controlled substance, namely cocaine, weighing less than one gram. *See* Tex. Health & Safety Code Ann. § 481.115(b). He was also indicted for evading arrest/detention with a vehicle. *See* Tex. Penal Code Ann. § 38.04(b)(2)(A). A three-day jury trial was held on February 19, 2019. At the motion to suppress hearing and later at trial, Texas Department of Public Safety Trooper Woodard testified about the events that led to Appellant's indictments.

Trooper Woodard testified that he was on patrol in an area known for high criminal activity on June 8, 2017. Trooper Woodard "was on Delaney Road parked on the side of the road" with his lights turned off. At about 2:55 a.m., he observed Appellant's vehicle exiting a motel parking lot onto Delaney Road "at a pretty quick rate of speed" without checking for traffic. Trooper Woodard was about 300 yards from the motel and "had a clear view" of Appellant's vehicle.

Trooper Woodard turned on his headlights and taillights and immediately "started to follow the vehicle as it continued to travel east on Delaney Road." As Appellant was driving away on Delaney Road, Trooper Woodard was "following, closing this distance." Appellant approached the intersection of Delaney Road and the I-45 feeder road, which is "a four-way stop with a red light stoplight." Appellant had a green light as he drove up to the intersection. Trooper Woodard testified that he observed Appellant commit a traffic violation because Appellant failed to signal his right turn until after he already had started his turn motion. Trooper Woodard "accelerated to get behind" Appellant and "run his license plate." He caught up to Appellant after Appellant entered the freeway. Trooper Woodard observed Appellant change lanes aggressively, "accelerate and then at

2

that high rate of acceleration then stop." He then activated his emergency lights to "initiate a traffic stop for the turn violation back on Delaney Road."

When Trooper Woodard activated his red and blue lights, Appellant briefly engaged his vehicle's brakes and then exited the freeway at the Vauthier exit. As Appellant exited, Trooper Woodard believed the vehicle was evading him and he activated his audible siren. Appellant entered the freeway again and Trooper Woodard pursued him at "speeds of 100 to 120 miles an hour southbound." After 6 miles of pursuit, Appellant pulled over onto the shoulder of the road.

Because Trooper Woodard was alone, he conducted a felony stop for officer safety. He drew his weapon and instructed Appellant to exit the car and lay on the ground. Appellant at first laid down but then stood up and "stuck his hands into his pockets." Trooper Woodard "told him to remove his hands from his pockets because [Trooper Woodard] didn't know if he was getting a weapon." Appellant complied with Trooper Woodard's instructions and laid back on the ground. As soon as other police officers arrived at the scene, Trooper Woodard arrested Appellant and placed him in his patrol car. Trooper Woodard conducted an inventory search of Appellant's vehicle. When he approached the vehicle on the driver's side, he found a small baggie of cocaine on the ground by the driver-side door.

Trooper Woodard testified that he had an in-car camera system, which turned on when he activated his emergency lights. He explained the traffic violation was not recorded because the video system in his patrol car "was an older one, and the video set by our department only goes back 30 seconds, not like the ones we have now that go back 2 minutes." The video was played at trial and showed that recording began when Trooper Woodard was behind Appellant's car on the freeway. It showed, among other things, Trooper Woodard's pursuit of

3

Appellant on the freeway, Trooper Woodard's and Appellant's actions during the stop, Appellant's arrest, and the search of Appellant's vehicle.

After the State and the defense rested, the trial court heard arguments on Appellant's motion to suppress. The court denied the motion, stating:

> Well, I'm going to respectfully deny your motion to suppress. . . . I have found at least in this case that there's no evidence to contradict the officer's version of the facts. There was not a video for me to look at to see when he turned his turn signal on. We have this, basically, unimpeached testimony that he didn't turn it on until during the turn, which certainly would have been less than a hundred feet from the intersection. So, for those reasons, I'm going to deny the motion to suppress.

The jury found Appellant guilty of possession of a controlled substance and evading arrest/detention with a vehicle. The trial court assessed Appellant's punishment at 15 years' confinement for possession of a controlled substance and 25 years' confinement for evading arrest/detention with a vehicle. Appellant filed a timely appeal.

## ANALYSIS

Appellant argues in his sole issue that the trial court erred by denying his motion to suppress because his "initial detention" for the traffic violation of failing to signal a turn for at least 100 feet before turning was unlawful.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *State v. Ruiz*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019); *Vasquez v. State*, 324 S.W.3d 912, 918 (Tex. App.—Houston [14th Dist.] 2010, pet ref'd). We afford almost total deference to a trial court's determination of historical facts. *Ruiz*, 577 S.W.3d at 545. In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Valtierra v. State*, 310

4

S.W.3d 442, 447 (Tex. Crim. App. 2010); *Aviles-Barroso v. State*, 477 S.W.3d 363, 380 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).  The trial court is entitled to believe or disbelieve all or part of a witness's testimony, even if that testimony is uncontroverted, because the trial court has the opportunity to observe the witness's demeanor and appearance.  *Valtierra*, 310 S.W.3d at 447; *Aviles-Barroso*, 477 S.W.3d at 380.

If the trial court makes express findings of fact, we view the evidence in the light most favorable to its ruling and determine whether the evidence supports those factual findings.  *Valtierra*, 310 S.W.3d at 447; *State v. Smith*, 335 S.W.3d 706, 714 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).  If the trial court does not enter findings of fact, we must view the evidence in the light most favorable to the trial court's ruling and assume it made implicit findings of fact that support its ruling as long as those findings are supported by the record.  *Valtierra*, 310 S.W.3d at 447.

We review a trial court's application of the law to the facts *de novo*.  *Ruiz*, 577 S.W.3d at 545; *Aviles-Barroso*, 477 S.W.3d at 380; *see also Valtierra*, 310 S.W.3d at 447.  We will sustain the trial court's ruling if that ruling is reasonably supported by the record and is correct on any theory of law applicable to the case.  *Ruiz*, 577 S.W.3d at 545; *Adams v. State*, 397 S.W.3d 760, 763 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

For Fourth Amendment purposes, a traffic stop is a seizure and must be reasonable to be lawful.  *Vasquez*, 324 S.W.3d at 919.  A police officer may make a warrantless traffic stop based on reasonable suspicion of a traffic violation.  *See Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015).  An officer has reasonable suspicion if he has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a

particular person has been or soon will be engaged in criminal activity. *Id.* This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A determination of reasonable suspicion is made by considering the totality of the circumstances. *Wade*, 422 S.W.3d at 668; *Ford*, 158 S.W.3d 492-93. The burden is on the State to demonstrate the reasonableness of the investigatory stop. *Goudeau v. State*, 209 S.W.3d 713, 716 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see also Ford*, 158 S.W.3d at 492.

The evidence in this case supports the trial court's finding that Trooper Woodard had reasonable suspicion to conduct a warrantless traffic stop based on Appellant's traffic violation. Trooper Woodard testified that he turned on his emergency lights to initiate a traffic stop because he observed Appellant signaling a turn after he already had started turning. "An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." Tex. Transp. Code Ann. § 545.104(b). Trooper Woodard's uncontroverted personal observation of Appellant failing to signal his right turn continuously for at least 100 feet before turning provided objective, articulable facts supporting a reasonable suspicion to stop Appellant for a traffic violation. *See Castro v. State*, 227 S.W.3d 737, 742 (Tex. Crim. App. 2007) (officer's observation of illegal lane change provided sufficient objective, articulable facts to support finding of reasonable suspicion that driver committed traffic violation by failing to signal his lane change).

As the trial court stated, "there's no evidence to contradict the officer's version of the facts. There was not a video for me to look at to see when he turned

6

his turn signal on. We have this, basically, unimpeached testimony that [Appellant] didn't turn it on until during the turn, which certainly would have been less than a hundred feet from the intersection." It is clear that the trial court believed Trooper Woodard's testimony. The trial court was in the best position to observe the credibility and demeanor of the witness, and it was not unreasonable for the trial court to credit Trooper Woodard's testimony and conclude that the Appellant was stopped for a traffic violation. *See id*. at 742-43.

Appellant argues in his brief that "the trial court's findings of fact just cannot be correct" because "Trooper Woodard testified that he was 300 yards away at 3:00 a.m. and he could see whether or not Franklin used his turn signal within 100 feet before pulling out of a parking lot onto Delaney road." According to Appellant, "three hundred yards is three football fields" and "it is just not possible to observe from three football fields at nighttime whether a person used his turn signal within 100 feet prior to turning." Appellant's argument is without merit.

Contrary to Appellant's assertion, Trooper Woodard did not testify that he could see whether Appellant used his turn signal within 100 feet before driving out of a motel parking lot onto Delaney Road. He only testified that he observed Appellant's vehicle exiting a motel parking lot onto Delaney Road "at a pretty quick rate of speed" without checking for traffic. He never testified he considered any action Appellant took while exiting the motel parking lot to be a traffic violation. Additionally, Trooper Woodard did not initiate a traffic stop because Appellant failed to use his turn signal when he exited a motel parking lot. Instead, Trooper Woodard testified he initiated a traffic stop because he observed Appellant committing a traffic violation at the intersection of Delaney Road and the freeway feeder road by failing to signal his right turn until after he already had started his right turn onto the freeway feeder road.

7

Moreover, there is no evidence that Trooper Woodard was 300 yards from where he observed Appellant commit a traffic violation at the intersection. Although no testimony regarding the exact distance was elicited, Trooper Woodard testified that he immediately started following Appellant as he left the motel parking lot and was "closing that distance" and was "coming up behind [Appellant's] vehicle" at the intersection. The trial court evaluated the credibility of the sole witness, testimony, and evidence provided at the suppression hearing and at trial and believed Trooper Woodard's account of why he initiated and conducted a traffic stop.

We conclude the trial court did not err in denying Appellant's motion to suppress. Accordingly, we overrule Appellant's sole issue.

## CONCLUSION

We affirm the trial court's judgments.

/s/    Meagan Hassan
Justice

Panel consists of Justices Bourliot, Hassan, and Poissant.
Do Not Publish — Tex. R. App. 47.2(b).