

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00216-CR

SAKHORN KHAMSIRY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 451st Judicial District Court
Kendall County, Texas
Trial Court No. 9133

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

On August 22, 2023, in Kendall County,[1] Sakhorn Khamsiry waived his right to a jury trial and pled guilty to the offense of possession of methamphetamine in the amount of four grams or more but less than 200 grams.[2] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (Supp.). After Khamsiry pled true to the State's punishment enhancement allegations, the trial court found Khamsiry guilty and sentenced him to fifty-five years' imprisonment. On appeal, Khamsiry claims the trial court erred in denying his motion to suppress. This is the only issue raised. Because we find the motion to suppress was properly denied, we affirm.

I.      **Factual Background**

On January 1, 2023, a concerned driver called 9-1-1 and reported to Boerne, Texas, dispatch that a reckless driver[3] was driving "all over the roadway." Deputy Merta responded to that call.[4] The reckless driver was reported to be in a red pickup truck.

Merta followed Khamsiry and planned to "initiate a stop somewhere where it was safe." After following Khamsiry, Merta observed that the driver of the truck was "unable to maintain his lane" and was "driving slowly" at approximately "[fifty] miles an hour." Merta followed him

[1]Originally appealed to the Fourth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We are unaware of any conflict between precedent of the Fourth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]Although this is a plea-bargain case, Khamsiry did not waive his right to appeal matters "raised by written motion filed and ruled on before trial and not withdrawn or waived." As a result, he did not waive his right to file an appeal raising the issue presented here: whether the trial court properly denied his motion to suppress.

[3]At the suppression hearing, the officer on patrol that night, Mitchell Quade Merta, deputy sheriff with the Kendall County Sheriff's Office, identified the reckless driver as Khamsiry.

[4]Merta's dashcam recorded the events of that night. The recording was admitted into evidence during the suppression hearing.

for several miles before he initiated a traffic stop. While following Khamsiry, Merta observed evidence of impaired driving. For example, Merta observed Khamsiry driving dangerously: "At one point when [Khamsiry] was driving, he went into the left lane and a car that was trying to pass, because he was going so slow, had to stop."

Ultimately, Merta initiated a traffic stop, and Khamsiry responded to the traffic stop by "stopp[ing] in the middle of the road." Merta "got on [his] PA" and advised Khamsiry "to pull forward." Khamsiry did not pull forward but stayed in the middle of the roadway. Merta then got out of his patrol car and approached Khamsiry's vehicle. Upon approach, Merta noticed Khamsiry did not make eye contact, was "looking down," and "was moving around in his vehicle." Khamsiry was also reaching into his "backpack and different places in the car."

Based upon his observations of Khamsiry's behavior, Merta asked Khamsiry to exit the vehicle. While Khamsiry was exiting his vehicle, Merta "noticed that he had . . . like a knife/flashlight combination on . . . the driver's side floorboard." As a result, Merta decided to do a pat down for weapons. Merta started on Khamsiry's left side and "felt a knife." Once Merta felt the knife, Khamsiry reached for the knife, but Merta directed him not to reach for it. Khamsiry complied. Merta then continued the pat-down search. In Khamsiry's midsection, "where [a] belt buckle would be," he "felt a hard, ball-shaped object," which he thought was "a top of a methamphetamine pipe."

Once Merta felt that object, Khamsiry "immediately reached for it." Merta told Khamsiry to stop, but he did not comply. As a result, Merta detained Khamsiry and took the object away from Khamsiry, which was a "black ball with electrical tape around it." Merta

3

believed it to contain methamphetamine. Ultimately, the police unwrapped the ball of tape, found a pipe, which when opened revealed a plastic bag containing "a clear, crystal-like substance." That substance was later found to be methamphetamine.

On April 27, 2023, Khamsiry filed a motion to suppress, seeking to suppress the methamphetamine contained in the pipe and obtained as a result of Merta's pat-down search of Khamsiry. On August 10, 2023, the trial court held a hearing on the motion. After the hearing, the trial court denied the motion. After that denial, Khamsiry was sentenced to fifty-five years' imprisonment in accordance with a negotiated plea agreement. On October 17, 2023, the trial court issued findings of fact and conclusions of law on the motion to suppress. The single issue in this appeal is whether that motion to suppress was properly denied. Upon review, we find that it was properly denied.

## II. Standard of Review

This is an appeal of the trial court's denial of a motion to suppress. As such, we apply a "bifurcated standard of review, giving almost total deference to a trial court's determination of historical facts and reviewing *de novo* the court's application of the law." *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) (citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)); *see also Ornelas v. United States*, 517 U.S. 690, 699 (1996) (recognizing that, "as a general matter[,] determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal").

We also "give almost total deference to the trial court in determining what the actual facts are, and then we review de novo whether those facts are sufficient to give rise to reasonable

4

suspicion." *Meadows v. State*, 356 S.W.3d 33, 36 (Tex. App.—Texarkana 2011, no pet.). Where a "trial court makes explicit findings of fact in ruling on a motion to suppress, a reviewing court views the evidence in the light most favorable to the trial court's ruling and determines whether the evidence, when viewed in that light, supports the fact findings." *State v. Smith*, 335 S.W.3d 706, 714 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (citing *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)); *see also In re L.R.*, 975 S.W.2d 656, 657–658 (Tex. App.—San Antonio 1998, no pet.) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

### III.     Analysis

The single issue in this appeal is whether the stop and pat down of Khamsiry violated the Fourth Amendment. *See* U.S. CONST. amend. IV (recognizing the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures"). It is well-established from *Terry v. Ohio* that, "[i]f an officer is justified in believing that a person whose suspicious behavior he is investigating is armed, he may frisk that person to determine if the suspect is, in fact, carrying a weapon and, if so, to neutralize the threat of physical harm." *Wade v. State*, 422 S.W.3d 661, 669 (Tex. Crim. App. 2013) (citing *Terry v. Ohio*, 392 U.S. 1, 24 (1968)), *abrogated by Lall v. State*, 686 S.W.3d 766 (Tex. Crim. App. 2024) (per curiam). Khamsiry argues that his *Terry* stop and pat-down search were "unlawful when the officers went beyond the scope of the search by squeezing and manipulating" the methamphetamine pipe. We find Merta did not exceed the scope of a legal *Terry* search. Consequently, the trial court properly granted the motion to suppress, and we affirm.

5

## A. *Terry* Standard and the "Plain-Feel" Doctrine

In *Terry v. Ohio*, the United States Supreme Court established a two-part test for an investigative detention, also referred to as a "stop and frisk" or stop and pat-down search. *Terry v. Ohio*, 392 U.S. 1, 10 (1968); *see Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). Under the first prong of *Terry*, an officer must have reasonable suspicion to justify the stop in the first instance. *Carmouche*, 10 S.W.3d at 328–29. Reasonable suspicion requires less support than probable cause. *See Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). Notably, "a traffic violation committed in an officer's presence authorizes an initial stop" and satisfies the requirement of reasonable suspicion. *State v. Daniel*, 446 S.W.3d 809, 813 (Tex. App.—San Antonio 2014, no pet.) (quoting *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982)).

Under the second prong of *Terry*, the scope of the detention or stop must also be reasonable. "The scope of the search must be limited because 'a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope.'" *Davis*, 947 S.W.2d at 243 (quoting *Terry*, 392 U.S. at 18). In assessing the constitutional scope of a *Terry* stop, the "plain-feel" doctrine has emerged, and it allows for not only a search for weapons but also other items whose incriminating nature is "immediately apparent." *See Minnesota v. Dickerson*, 508 U.S. 366, 370–71, 375 (1993). Under this doctrine, "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." *Id.* at 375. The "plain-feel"

6

doctrine, however, does not allow an officer to further examine incriminating items that are "not immediately apparent." *Id.* at 379.

Actual knowledge is not required to demonstrate contraband was "immediately apparent." *See Joseph v. State*, 807 S.W.2d 303, 308 (Tex. Crim. App. 1991) (citing *Texas v. Brown*, 460 U.S. 730 (1983)) (recognizing "[t]he immediately apparent prong of the plain view analysis does not require actual knowledge of the incriminating evidence"). Instead, the "viewing officers must have probable cause to believe an item in plain view [or feel] is contraband before seizing it." *State v. Dobbs*, 323 S.W.3d 184, 189 (Tex. Crim. App. 2010).

Applying the "plain-feel" doctrine, the Texas Court of Criminal Appeals found the police's seizure of a bulge of money from the accused's pocket during a *Terry* stop was proper. *See Carmouche*, 10 S.W.3d at 330–31. Because the police officer "immediately recognized the bulge in appellant's pocket as money" and had an "articulable suspicion that appellant was trafficking in cocaine," such that the incriminating nature of the money was immediately apparent, the seizure of the money was consistent with the "plain-feel" doctrine in *Dickerson. Id.* at 330. Similarly, in *Griffin v. State*, the Texas Court of Criminal Appeals found the police's seizure of plastic tubes from the accused's pocket during a *Terry* stop to be proper. *Griffin v. State*, 215 S.W.3d 403, 410 (Tex. Crim. App. 2006). As stated in *Griffin*, "[t]he record supports a finding" that the police officer "immediately recognized the tubes in appellant's pocket as contraband based on his knowledge that appellant used [those] types of containers to carry illegal narcotics." *Id.*

7

### B.     Pat Down of Khamsiry

In his appeal, Khamsiry does not claim the initial stop was unreasonable under *Terry*. Instead, he argues Merta exceeded the permissible scope of a *Terry* pat down because the methamphetamine pipe "was not immediately apparent as contraband." Khamsiry claims Merta "went beyond the scope of the search by squeezing and manipulating" the methamphetamine pipe.

Khamsiry claims this case is analogous to *Young v. State*, wherein the First Court of Appeals found the seizure of a pill bottle exceeded the parameters of *Terry*. *See Young v. State*, 563 S.W.3d 325 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). In *Young*, the illegal nature of the contents of a pill bottle was not immediately apparent to the officer. *Id.* at 328. The officer could only speculate that the pill bottle might contain narcotics, based off his experience. *Id.* Likewise, Khamsiry claims that the facts in his case are analogous to *Graham v. State*. *See Graham v. State*, 893 S.W.2d 4 (Tex. App.—Dallas 1994, no pet.). In *Graham*, the Fifth Court of Appeals found the pat-down search was not authorized by *Terry* when an officer seized a pocket watch that made a "crackling sound." *Id.* at 6. After manipulating the watch and opening it, the pocket watch was found to contain cocaine. *See id.* Upon review, we find *Young* and *Graham* are both distinguishable.

In the present action, the nature of the methamphetamine pipe was immediately apparent to Merta. During his testimony, Merta described feeling a "round-shaped object, really hard when you pushed on it." He believed it to be "a top of a methamphetamine pipe." He based that

belief upon his "training and experience." The trial court also made the following factual findings regarding Merta's pat down and discovery of the item:

18. While further patting down the driver, Deputy Merta felt what he believed to be, based on his training and experience, the bulb of a methamphetamine pipe near the driver's belly button. Deputy Merta discovered the contraband by plain feel and did not exceed the scope of Deputy Merta's search for weapons. When Deputy Merta felt what he believed to be a methamphetamine pipe, the driver reached for the pipe and pulled his body away. Deputy Merta requested the driver not to reach for the methamphetamine pipe. The driver did not cooperate with Deputy Merta's request and continued to reach for the item Deputy Merta believed was a methamphetamine pipe.

Unlike the pill bottle in *Young* and the pocket watch in *Graham*, the pipe in the present action satisfies the "plain-feel" doctrine because its incriminating nature was immediately apparent to Merta.[5] The circumstances here more closely resemble those in *Griffin*. In that case,

---

[5]During cross-examination of Merta, Khamsiry's counsel encouraged Merta to change his testimony and state that he manipulated the pipe to determine what it was. While Merta testified that he manipulated the pipe at some point in time, his assessment of the nature of the pipe was based on his training and experience and not based on his manipulation of the pipe. The relevant testimony is as follows:

Q. You squeezed it?

A. Yes.

Q. Okay. You manipulated it with your fingers?

A. Yes.

Q. Okay. Prior to that, you felt a hard, round object; is that right?

A. Yes.

Q. But was it hard? I mean, if you were able to squeeze?

A. Well, when I say squeeze, I didn't penetrate or anything. It was just - -

Q. I'm sorry?

A. I squeezed it, but it wasn't pliable, it was hard.

9

a shirt pocket contained items with a shape consistent with drug paraphernalia, and the investigatory detainee strove to keep the officer from feeling the items. *Griffin*, 215 S.W.3d at 406.

Based upon these facts and our de novo review of the applicable standards from *Terry*, *Dickerson*, and the relevant caselaw, we affirm the trial court's denial of Khamsiry's motion to suppress.

## IV.    Conclusion

We affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:      March 13, 2024
Date Decided:        May 20, 2024

Do Not Publish

---

Q.    You squeezed it?

A.    Yes.

Q.    To determine if it was a crack [methamphetamine] pipe first?

A.    No, not at first.

Consistent with the trial court's finding, Merta's manipulation of the pipe at some point in time did not change the immediately apparent nature of the item such that the search was unconstitutional under *Terry*. *See, e.g.*, *In re L.R.*, 975 S.W.2d at 659–60 (holding that the officer's search was consistent with *Terry* where, even though the officer later manipulated the cellophane baggie, the officer immediately recognized the incriminating nature of the cellophane baggie from his training and experience, which taught him that "illicit substances were commonly wrapped in cellophane packaging").

10