02-09-448-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00448-CR

 


 
 
 ANGELA DODD HAMAL
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 271ST DISTRICT Court OF WISE
COUNTY

----------

 

OPINION

----------

 

I.  Introduction

          Appellant
Angela Dodd Hamal appeals her conviction for possession
of a controlled substance in an amount of four grams or more but less than 200
grams.  In three points, Hamal argues that the trial court erred by denying her
motion to suppress and her requested jury instructions.  We will reverse and
remand for a new trial.

II.  Factual
and Procedural Background

Texas Department of Public
Safety Trooper David Riggs stopped Hamal’s vehicle after witnessing it
travelling 79 miles per hour in a 65-miles-per-hour zone.  When he approached
Hamal’s vehicle, Trooper Riggs noticed that Hamal was nervous, her hands were
shaking, and she was looking down into a purse or bag.  After asking Hamal to
get out of the car, Trooper Riggs asked her several questions, including, “Have
you ever been in any trouble for anything?” Hamal responded, “No.”  Hamal also
responded, “No,” when asked if she had anything illegal in her car.  Trooper
Riggs went back to his police car and requested that dispatch run her driver’s
license number.  The criminal history check revealed that Hamal had been
arrested nine times, four of which were for possession of controlled substances.

Believing that Hamal “may be
hiding something,” Trooper Riggs asked for consent to search her vehicle, which
she denied.  Trooper Riggs then called dispatch and requested a drug detection canine
unit.  While waiting for the canine unit to arrive, Trooper Riggs explained to
Hamal that she had “seemed kind of nervous” when she got out of her car and had
lied when she told him that she “had never been in trouble and never been
arrested.”  Hamal replied, “No.  No.  I said that I am not in any trouble right
now. I have been arrested.  I do have a past, and it was a long time ago.”

Corporal Robert Payne of the
Wise County Sherriff’s Office arrived with his drug dog approximately thirty-two
minutes after the initial stop.  Approximately ten minutes later, the dog began
sniffing Hamal’s car and alerted on it.  A search of her car revealed a pipe
and a bag containing 4.82 grams of methamphetamine.  Hamal was arrested.

Hamal filed a motion to
suppress all evidence seized as a result of her arrest, and without holding a
hearing, the trial court denied her motion.  Neither party requested findings of
fact or conclusions of law.

At trial, after both parties
rested, the trial court denied Hamal’s proposed jury instructions, including
her request for a code of criminal procedure article 38.23 instruction.  A jury
convicted Hamal of possession of a controlled substance and, after she pleaded “true”
to enhancement offenses, assessed punishment at thirty-five years’ confinement.
 After a hearing, the trial court denied Hamal’s motion for new trial, in which
she argued that the trial court had erred by denying her motion to suppress.  This
appeal followed.

III.  Expert Testimony Regarding Canine Sniff

In a portion of Hamal’s first
point, she asserts that the trial court abused its discretion by overruling her
rule 702 objection to the testimony of Corporal Payne as an expert witness
regarding the canine sniff.[1]

A.  Standard of Review and Rule 702

We review a trial court’s
ruling on admissibility of scientific evidence under an abuse of discretion
standard. See Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App.
2000).  We review the trial court’s ruling in light of the evidence that was
before the court at the time of the ruling.  Id.  We must uphold the
ruling if it was within the zone of reasonable disagreement.  Id.

Rule of evidence 702,
governing admission of expert testimony, provides that “[i]f scientific,
technical, or other specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue, a witness qualified as
an expert by knowledge, skill, experience, training, or education may testify
thereto in the form of an opinion or otherwise.”  Tex. R. Evid. 702.  A
proponent of scientific evidence must show by clear and convincing proof that
the proffered evidence is sufficiently relevant and reliable to assist a
factfinder in determining a fact issue or understanding the evidence.  See
Weatherred, 15 S.W.3d at 542; State v. Smith, 335 S.W.3d 706, 711
(Tex. App.—Houston [14th Dist.] 2011, pet. ref’d).

The court of criminal appeals
has prescribed three criteria for assessing reliability of scientific evidence
and has identified seven nonexclusive factors for consideration.  Kelly v.
State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992); see Winston v. State,
78 S.W.3d 522, 525 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d).  However,
because interpretation of a dog’s reaction to a scent is based on training and
experience rather than scientific principles, we apply the “less rigorous” test
set forth in Nenno v. State, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998),
overruled on other grounds by State v. Terrazas, 4 S.W.3d 720 (Tex.
Crim. App. 1999).  See Winston, 78 S.W.3d at 525–26 (applying Nenno
standard to admissibility of dog-scent lineups); see also Smith, 335
S.W.3d at 711 (same).  Under this standard, a court considers whether
(1) the field of expertise is legitimate, (2) the subject matter of
the expert’s testimony is within the scope of the field, and (3) the
expert’s testimony properly relies on or utilizes the principles involved in
the field.  Nenno, 970 S.W.2d at 561; Winston, 78 S.W.3d at 526; see
also Smith, 335 S.W.3d at 711.

B.  Corporal Payne’s Testimony

Corporal Payne testified that
after completing an eighty-hour training course, he and the dog were nationally
certified in drug interdiction and that he was also nationally certified as a
handler for the dog.  To obtain certification, the dog had to prove its
accuracy in locating concealed narcotics, including methamphetamine.  Corporal
Payne testified that the dog had not made any errors when it completed the
national certification testing.  He also testified that he had used the dog to
detect drugs on many occasions and that the dog had successfully detected drugs
or controlled substances inside vehicles.  He said that the dog alerted through
“a big head turn. You’ll see his head, his shoulders, his whole body turn back,
and follow the odor with his nose.  And then he’ll go into a sitting position.”

Corporal Payne also testified
about the events recorded by Trooper Riggs’s dashboard camera and about the
three separate alerts that the dog made on Hamal’s car:  (1) the alert on the
passenger side door almost immediately after approaching the vehicle, (2) the
alert after the dog jumped up and sniffed the interior of Hamal’s car through the
open passenger side window, and (3) the alert once the dog entered the vehicle.
 Corporal Payne stated that as he and Trooper Riggs searched Hamal’s car, the
dog continued to alert on the car.  Corporal Payne said that after the dog
alerted, he gave the dog its reward, a white rubber ball.

During cross-examination,
Corporal Payne stated that he “wouldn’t necessarily say [that he is] an expert
witness,” that he is not an expert at dog training, but that he is an expert at
dog handling and could testify about what the dog did.  He also testified that
he had not trained the dog but that he knew what the dog’s alert was, what
training the dog had received, how responsive the dog was, and the dog’s error
rate.  He said that he did not keep a numeric log of the dog’s error rate and
that determining the error rate is complicated because lingering scents could
cause the dog to alert even after contraband has been removed. 

C.  Admission of Testimony Not Abuse of Discretion

In four subpoints, Hamal
attacks the trial court’s implied finding that Corporal Payne’s testimony
satisfied the requirements of Nenno’s third prong:  whether the expert’s
testimony properly relies upon or utilizes the principles involved in the
field.  See 970 S.W.2d at 561.

First, she alleges that
Corporal Payne’s “admission” that he was not necessarily an expert and was not
present when the dog was trained required that the trial court sustain her
objection.  However, a review of the record reveals that although Corporal
Payne admitted that he was not an expert in dog training, he detailed his credentials
and experience and stated that he was nationally certified in dog handling and
was an expert in that area.  Corporal Payne’s testimony supports the trial
court’s implied finding that he was qualified to testify as an expert witness
in dog handling.

Second, Hamal asserts that
Corporal Payne was disqualified as an expert witness because he was not present
when the dog was trained, did not know the dog’s error rate, and did not bring
the dog’s field records with him for Hamal’s inspection.  Corporal Payne
testified about his credentials, expertise, and his experience with the dog
that alerted on Hamal’s car.  Specifically, Corporal Payne stated that he and
the dog had received national certification after completing an eighty-hour
training course that included proving the dog’s ability to detect illegal
substances, including methamphetamine.  Corporal Payne testified that the dog
had detected drugs in vehicles on “many occasions.”  Thus, the trial court
reasonably could have found that Corporal Payne was qualified to testify about
the dog’s actions on the night of Hamal’s arrest.

Third, Hamal asserts that the
trial court should have excluded Corporal Payne’s testimony because he
contradicted himself about how the dog alerts to the scent of narcotics and about
the dog’s reward.  Hamal asserts that Corporal Payne told her on the night of
her arrest that the dog alerted by sitting down and that this conflicted with
his testimony at trial that the dog alerted by making a “‘big head turn’
(basically a full body turn) and then he sits.”  However, the trial court could
have concluded that Corporal Payne’s testimony simply elaborated on the dog’s
alert process as explained to Hamal on the night of her arrest.  Hamal also
points to a conflict between the video recording of the canine sniff, which she
alleges shows Corporal Payne encouraging the dog with a black object, and
Corporal Payne’s testimony that the dog’s reward is a “white, roundish rubber
ball.”  Although the video does not clearly show the black object Hamal refers
to, if in fact two distinct rewards existed, Hamal did not put on conflicting
expert testimony that multiple rewards for drug dogs is improper. 
Consequently, the trial court could have determined that the use of multiple
rewards was a proper principle in the field of canine-sniff testing.

Fourth, Hamal asserts that the
video recording shows that Corporal Payne “cued” the dog.  She asserts that
Corporal Payne “led the dog directly to [her car], ordered the dog to stick his
head in the window, and finally opened the door and ordered the dog into [her]
car.”  At trial, Hamal did not offer expert testimony as to what constitutes “cueing,”
and on appeal, she does not explain how Corporal Payne’s actions, as seen on
the video, qualify as “cueing.”  Thus, the trial court was within its
discretion to find that Corporal Payne did not “cue” the dog and utilized the
principles of the field of canine-sniff testing. 

Additionally, the record does
not support Hamal’s sequence of events.  The record shows that after a
discussion with Hamal, Corporal Payne and his dog approached the passenger side
of Hamal’s car from the grassy area beyond the road’s shoulder, walked to the
front of the car, and walked along the passenger side toward the rear of the
car, and that almost immediately the dog turned around and sat down—“alerted”
per Corporal Payne’s testimony—by Hamal’s passenger door.  Corporal Payne then
instructed the dog to jump onto its hind legs and sniff the interior of Hamal’s
car through the open passenger window, after which the dog again sat down—noted
as a second alert in Corporal Payne’s testimony.  After the dog sat down a
second time, Corporal Payne opened Hamal’s unlocked passenger side door and
ordered the dog inside.  Although not visible on the video recording, Corporal
Payne testified that the dog alerted a third time while inside Hamal’s car.  

Having addressed all of Hamal’s
complaints regarding her rule 702 objection, we conclude that Corporal Payne’s
testimony did not fail the Nenno test and that the trial court did not
abuse its discretion by admitting Corporal Payne’s testimony over Hamal’s rule
702 objection.  See Tex. R. Evid. 702; Nenno, 970 S.W.2d at 561. 
We overrule this portion of Hamal’s first point.

IV.  Motion to Suppress

In the
remainder of her first point, Hamal argues that the trial court erred by
denying her motion to suppress because Trooper Riggs lacked reasonable
suspicion to continue detaining her for a canine sniff.  

A.  Standard of
Review

 

          We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court’s decision, we do not engage in our own
factual review.  Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App.
1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no
pet.).  The trial judge is the sole trier of fact and judge of the credibility
of the witnesses and the weight to be given their testimony.  Wiede v. State,
214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); State v. Ross, 32 S.W.3d
853, 855 (Tex. Crim. App. 2000), modified on other grounds by State v.
Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give almost
total deference to the trial court’s rulings on (1) questions of
historical fact, even if the trial court’s determination of those facts was not
based on an evaluation of credibility and demeanor, and
(2) application-of-law-to-fact questions that turn on an evaluation of
credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez v.
State, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); Johnson v. State,
68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court’s rulings on those
questions de novo.  Amador, 221 S.W.3d at 673; Estrada v. State,
154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at
652–53.  Stated another way, when reviewing the trial court’s ruling on a
motion to suppress, we must view the evidence in the light most favorable to
the trial court’s ruling.  Wiede, 214 S.W.3d at 24; State v. Kelly,
204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

          When,
as here, the record is silent on the reasons for the trial court’s ruling, or
when there are no explicit fact findings and neither party timely requested
findings and conclusions from the trial court, we imply the necessary fact
findings that would support the trial court’s ruling if the evidence, viewed in
the light most favorable to the trial court’s ruling, supports those findings. 
State v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); see
Wiede, 214 S.W.3d at 25.  We then review the trial court’s legal ruling
de novo unless the implied fact findings supported by the record are also
dispositive of the legal ruling.  Kelly, 204 S.W.3d at 819.

B. 
Law on Reasonable Suspicion

          The
Fourth Amendment protects against unreasonable searches and seizures by
government officials.  U.S. Const. amend. IV; Wiede, 214 S.W.3d at 24.  Once
a defendant establishes that a search or seizure occurred without a warrant,
the State bears the burden to establish that the search or seizure was
conducted pursuant to a warrant or was reasonable.  Amador, 221 S.W.3d
at 672–73; Torres v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); Ford
v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

          A
detention, as opposed to an arrest, may be justified on less than probable
cause if a person is reasonably suspected of criminal activity based on
specific, articulable facts.  Terry v. Ohio, 392 U.S. 1, 22, 88
S. Ct. 1868, 1880 (1968); Carmouche v. State, 10 S.W.3d 323, 328
(Tex. Crim. App. 2000).    Reasonable suspicion exists when, based on the
totality of the circumstances, the officer has specific, articulable facts that
when combined with rational inferences from those facts, would lead him to
reasonably conclude that a particular person is, has been, or soon will be
engaged in criminal activity.  Ford, 158 S.W.3d at 492.  This is an
objective standard that disregards any subjective intent of the officer making
the stop and looks solely to whether an objective basis for the stop exists.  Id.

During
an investigative traffic stop, an officer is entitled to request information
concerning the driver’s license, ownership of the vehicle, the driver’s
insurance information, the driver’s destination, and the purpose of the trip.  Lambeth
v. State, 221 S.W.3d 831, 836 (Tex. App.—Fort Worth 2007, pet. ref’d) (en
banc) (op. on reh’g); Mohmed v. State, 977 S.W.2d 624, 628 (Tex. App.—Fort
Worth 1998, pet. ref’d); see also United States v. Shabazz, 993
F.2d 431, 436–37 (5th Cir. 1993); Razo v. State, 577 S.W.2d 709, 711
(Tex. Crim. App. [Panel Op.] 1979).  An officer may also conduct a computer
check on the driver’s license and registration and for outstanding warrants as
long as it does not unreasonably prolong the time necessary to effect the
purpose of the initial stop.  See Kothe v. State, 152 S.W.3d 54,
63, 65 (Tex. Crim. App. 2004).  Once an officer concludes the investigation of
the conduct that initiated the stop, continued detention of a person is
permitted only if there is reasonable suspicion to believe that another offense
has been or is being committed.  Davis v. State, 947 S.W.2d 240, 245
(Tex. Crim. App. 1997).

Generally,
a canine sweep does not constitute a search within the meaning of the Fourth
Amendment.  See United States v. Place, 462 U.S. 696, 707, 103 S.
Ct. 2637, 2644–45 (1983); Mohmed, 977 S.W.2d at 628; see also
Crockett v. State, 803 S.W.2d 308, 310 n.5 (Tex. Crim. App. 1991).  The
temporary detention of an automobile to allow an olfactory inspection by a
police dog trained to detect the odor of illegal drugs is not offensive to the
Fourth Amendment when based on a reasonable suspicion that the automobile
contains narcotics.  Mohmed, 977 S.W.2d at 628; see also Crockett,
803 S.W.2d at 311. 

C.  Videotape of Stop
and Trooper Riggs’s Testimony

 

During Hamal’s trial, the jury
watched a video and audio recording of the stop taken by Trooper Riggs’s
dashboard camera.  The recording shows that Hamal and Trooper Riggs brought
their vehicles to a stop on the shoulder of the highway.[2]  Trooper Riggs approached
Hamal’s car and initiated the following conversation with Hamal through her
open passenger window:  

Trooper Riggs:      I was stopping
you for speed.  

 

Hamal:                  I know.

 

Trooper Riggs:      Do you have your
driver’s license? 

 

Hamal:                  I
have my driver’s license and my insurance, and I am really sorry.

 

Trooper Riggs:      Okay, where are
you headed to?

 

Hamal:                  Fort Worth.

 

Trooper Riggs:      From where?

 

Hamal:                  Decatur.

 

Trooper Riggs:      Coming
from here.  Can you step back here with me?

 

Hamal:                  Yes.

 

Trooper Riggs:      Back here out of
the road.  I will talk to you.

 

Hamal:                  Okay.  Okay.[[3]]

 

Trooper Riggs:      Is that your
right address?

 

Hamal:                  Yes,
sir.  I’m going home to Arlington.  Fort Worth, Arlington.

 

Trooper Riggs:      But
you were coming from Decatur.

 

Hamal:                  Yes, sir.

 

Trooper Riggs:      What do you do
here?

 

Hamal:                  I was up
here visiting a friend.

 

Trooper Riggs:      Okay, you’re not
working or anything?

 

Hamal:                  No.

 

Trooper Riggs:      What year model
is your car? 

 

Hamal:                  97.  

 

Trooper Riggs:      Okay.

 

Hamal:                  It goes too
fast.

 

Trooper Riggs:      Yeah.  It does.[[4]]

 

The following exchange occurred at an elapsed time of 1:86: 

 

Trooper
Riggs:      Have you ever been in any trouble for anything?

 

Hamal:                  No.

 

Trooper
Riggs:      Nothing illegal in the car or nothing?

          

Hamal:                  No. 
No.  No. 

 

Trooper Riggs:      What’s
going to happen is there is going to be a citation for your speed.

 

Hamal:                   Let
me make it please . . . how fast was I going?

 

Trooper
Riggs:      79.

 

Hamal:                  79,
oh gosh.  Oh my gosh, I am so sorry.

 

Trooper
Riggs:      Alright, just wait here.  I will be right with you.

 

Hamal:                  Okay. 
Can I wait in my car?

 

Trooper
Riggs:      No, just wait right here just a second.

 

Hamal:                  Okay. 
 

 

Trooper Riggs then returned to
his squad car and called dispatch to check Hamal’s driver’s license for
outstanding warrants and her criminal history.  At an elapsed time of 3:92, he
learned that Hamal had nine prior arrests for possession of controlled
substances, prostitution, and probation revocation and that Hamal’s most recent
arrest was seven months prior, in February 2008, for possession of a controlled
substance.  Trooper Riggs said to himself in his squad car, “She said she’s
never been arrested.  Real nervous.”  Trooper Riggs returned to Hamal, where
the following exchange took place:

Trooper Riggs:      Just
step back with me.  My ticket printer is running kind of slow.  Come back here
and talk to me. 

 

Hamal:                  Yes, sir.

 

Trooper Riggs:      There’s
another part of my job out here; we look for illegal weapons, drugs, marihuana. 
Do you have any of that in that vehicle?  

 

Hamal:                  I don’t have
any of that.  

 

Trooper Riggs:      Would
you care if I take a look for those items and search it?

 

Hamal:                  Yes, I do,
sir.

 

Trooper Riggs:      You
do.  Okay, hang on just a second.  I really am having trouble with my ticket
printer here so this is going to take just a minute.  

 

Trooper Riggs returned to his
squad car and called dispatch to request a canine unit, stating, “I have one
refusing to consent.”  Corporal Payne responded that he would be there in about
twenty minutes with a canine unit.  Trooper Riggs again said to himself, “Says
she had never been arrested.”  Trooper Riggs returned to Hamal, and the
following exchange took place at an elapsed time of 11:09: 

Hamal:                  I am sorry I
was speeding.

 

Trooper Riggs:      Well
alright here is the deal. I’ll kill your car while we wait for the canine to
come real quick and then I’ll let you get on your way.  Just wait right here
for me.  Stay right there.

 

Hamal:                  What is the
problem?  Did I do something?

 

Trooper Riggs:      Well,
yeah, you seemed kind of nervous when you got out and then you lied to me.

 

Hamal:                  What did I
lie to you about, sir?

 

Trooper Riggs:      You
told me that you had never been in trouble and never been arrested. 

 

Hamal:                  No. 
No.  I said that I am not in any trouble right now. I have been arrested.  I do
have a past, and it was a long time ago.  I don’t . . . 

 

Trooper Riggs:      Well,
if you had told me that, it would have been a little bit different, but . . .

 

Hamal:                  Well,
I didn’t know specifically what you were asking—if I had been in any trouble
recently, or twenty years ago, or five years ago. . . .  Plus, everybody’s
nervous who gets pulled over by law enforcement, who isn’t?  

 

Trooper Riggs:      Well,
as soon as that dog gets here, then I’ll let you get on your way.  We’ll run
the dog around it and if everything is good, you’ll be good to go.

 

While waiting
for the canine unit to arrive, Hamal again asserted that she had misinterpreted
Trooper Riggs’s question; Trooper Riggs responded that he had interpreted her
answer as her not being honest with him.

Corporal Payne arrived
approximately thirty-two minutes after
Hamal’s initial stop and about twenty-three minutes after he was dispatched.  Hamal
immediately told Corporal Payne that she had misunderstood Trooper Riggs’s
question as asking if she was in any trouble and explained that, other than an
arrest in February 2008 that “was thrown out by the grand jury,” she had not
been arrested in twenty years.  There was about a nine-minute delay between
Corporal Payne’s arrival and the beginning of the dog’s search due to the
discussion between Hamal and Corporal Payne and a pat-down search of Hamal. 
The canine began sniffing Hamal’s car at an elapsed time of 40:98, and it
alerted on the car within seconds.  After searching Hamal’s car for fifteen minutes,
the officers found a pipe and 4.82 grams of methamphetamine in a false-bottom
spray can and arrested Hamal.   

At trial, Trooper Riggs
testified that when he stopped Hamal, he noticed that her hands were shaking
and that she was looking down into a purse or bag as he approached.  He
explained that after Hamal got out of her car, he did not notice her shaking
anymore; when asked if she was still nervous while standing and talking to him,
he responded that she “just [stood] real still.”  Trooper Riggs testified that
he had detained Hamal because she was nervous and lied to him about her
criminal history and that, at the time, he believed that she was possibly also lying
about having something illegal in her car.  On cross-examination, he stated
that he did not initially have probable cause to search Hamal’s vehicle but
that he thought he had a right to call in a canine unit.  He said that he knew
nervousness alone was not an indicator of criminal activity; that he did not
clarify his question about Hamal’s past even though she told him that she had
trouble hearing him and did not understand his question; and that he knew that
the presence of a criminal record was not a factor that supported probable
cause to conduct a search.  

D.  Denial of Motion to Suppress
for 

Lack of Reasonable Suspicion was
Not Error

 

Hamal
does not challenge the lawfulness of Trooper Riggs’s initial detention of her
for speeding.  She contends, however, that he lacked reasonable suspicion to
continue detaining her for a canine sniff once he concluded the investigation
into speeding.  The only facts that can support reasonable suspicion for Hamal’s
continued detention are Trooper Riggs’s observation that she was nervous when
he initially approached her vehicle; Trooper Riggs’s discovery of Hamal’s criminal
history after she answered, “No,” when asked if she had “ever been in any trouble
for anything”; and Hamal’s criminal history, which included multiple arrests for possession of controlled
substances.

Hamal’s
nervousness is a factor to consider in determining reasonable suspicion, see
Illinois v. Wardlow, 528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000); Haas
v. State, 172 S.W.3d 42, 54 (Tex. App.—Waco 2005, pet. ref’d), but her nervousness
alone does not support a reasonable suspicion determination, see Davis,
947 S.W.2d at 248; Sieffert v. State, 290 S.W.3d 478, 485 (Tex. App.—Amarillo
2009, no pet.).  Likewise, Hamal’s prior arrests cannot be the basis for
reasonable suspicion, see United States v. Jones, 234 F.3d 234, 242 (5th
Cir. 2000) (noting that prior arrest alone does not amount to reasonable
suspicion), but, in certain cases, they can be a factor to consider in
determining reasonable suspicion when combined with other factors and
especially when those arrests are drug related.[5]  See Parker v. State,
297 S.W.3d 803, 811 (Tex. App.—Eastland 2009, pet. ref’d) (considering lengthy
criminal history, including numerous drug offenses, as part of totality of
circumstances in reasonable suspicion determination); Coleman v. State,
188 S.W.3d 708, 718–19 (Tex. App.—Tyler 2005, pet. ref’d) (same), cert.
denied, 549 U.S. 999 (2006); Powell v. State, 5 S.W.3d 369, 378 (Tex.
App.—Texarkana 1999, pet. ref’d) (same), cert. denied, 529 U.S. 1116
(2000); see also Morris v. State, No. 07-06-00141-CR, 2006 WL 3193724,
at *3 (Tex. App.—Amarillo Nov. 6, 2006, no pet.) (mem. op., not designated for
publication) (same).  And regarding Hamal’s denial of having “ever been in any
trouble for anything,” if Trooper Riggs could have reasonably interpreted her
answer as a denial of having ever been arrested, the fact that Trooper Riggs
discovered that she, in fact, had multiple prior arrests, including four drug-related
arrests, is also a factor to consider in determining reasonable suspicion.  See,
e.g., United States v. Copeland, 102 Fed. Appx. 855, 857–58 (5th
Cir. 2004) (considering fact that officer discovered that passenger had lied
when asked if he had ever been arrested as support for reasonable suspicion
determination); Coleman, 188 S.W.3d at 718–19 (same); Simpson v. State,
29 S.W.3d 324, 328–29 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d) (same);
Powell, 5 S.W.3d at 378 (same); cf. McQuarters v. State,
58 S.W.3d 250, 260 (Tex. App.—Fort Worth 2001, pet. ref’d) (concluding that
officer lacked reasonable suspicion to detain defendant in order to conduct a
canine search after lawful traffic stop and distinguishing Powell because,
at the time of the McQuarters detention, the officer had dismissed his
suspicions related to the initial traffic stop’s purposes, had issued two
warnings, and “did not catch appellant lying or discover any prior drug
offenses”).

 

Hamal
argues that Trooper Riggs’s questions regarding her past trouble and whether her
car contained anything illegal were “not question[s] contemplated by the
relevant case law,” but a police officer’s questioning, even on a subject
unrelated to the stop, cannot be the basis for a Fourth Amendment violation.  See
Shabazz, 993 F.2d at 436 (“Mere questioning, however, is neither a search
nor a seizure.”); see also Florida v. Bostick, 501 U.S. 429, 434,
111 S. Ct. 2382, 2386 (1991) (noting same); St. George v. State, 197
S.W.3d 806, 819 (Tex. App.—Fort Worth 2006) (“‘[D]etention, not questioning, is
the evil at which Terry’s second prong is aimed.’” (quoting Shabazz,
993 F.2d at 436)), aff’d, 237 S.W.3d 720 (Tex. Crim. App. 2007).  The
questioning at issue here did not extend the duration of the initial, valid
stop; the questions were asked less than two minutes after Trooper Riggs
stopped Hamal, during the course of his investigation of the original purpose
of the stop, and prior to informing her that he was giving her a citation for
speeding.  See Shabazz, 993 F.2d at 436–37 (dismissing notion that a
police officer’s comments on an unrelated subject constitute a per se Fourth
Amendment violation and holding as lawful an officer’s questioning that did not
extend the duration of the initial valid seizure); see also Edmond v. State,
116 S.W.3d 110, 114 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d)
(concluding that questioning about drugs during a traffic stop was permissible
when it did not unreasonably prolong the detention).

The
crux of Hamal’s suppression issue hinges on whether Trooper Riggs could have
reasonably believed that Hamal was lying about having ever been arrested when
she denied having “ever been in any trouble for anything,” even after she
explained that she had misunderstood his question.  If Trooper Riggs did not
act reasonably in so believing, her nervousness at the beginning of the stop
and her past criminal history, without more, could not provide the basis for her
continued detention.  See Davis, 947 S.W.2d at 248; Parker,
297 S.W.3d at 811; Sieffert, 290 S.W.3d at 485.  If, on the other hand,
Trooper Riggs was reasonable in believing that Hamal had understood his
question and had lied, then case law supports the trial court’s implied finding
of reasonable suspicion for her continued detention based on her nervousness,
her lying about her criminal history, and her lengthy criminal history, which
included a very recent drug-possession arrest and three other drug-possession
arrests.[6] 
See Copeland, 102 Fed. Appx. at 857–58 (“Copeland had lied to the
officer about his prior convictions, and thus, the officer was justified in
investigating further.”); Morris, 2006 WL 3193724, at *3 (nervousness,
history of multiple drug-related offenses, and lying about prior arrests
supported reasonable suspicion determination); Coleman, 188 S.W.3d at
718–19 (reasonable suspicion existed based on suspect’s prior drug-related arrests,
lying about prior arrests, and possession of small jeweler’s bags commonly used
in drug trafficking); Simpson, 29 S.W.3d at 328–29 (reasonable suspicion
existed based on suspect’s immediate exit from his vehicle, nervousness,
blurted responses to officer’s questions, and lying about prior arrests); Powell,
5 S.W.3d at 378 (nervousness, conflicting information, prior drug offenses, and
lying when asked about prior arrests constituted sufficient facts to support
reasonable suspicion).

Certainly,
Trooper Riggs could have asked a clearer question­—i.e., “Have you ever been
arrested before?” or “Do you have a criminal history?”  And evidence exists,
via the videotape, that Hamal did not understand his question as asked and
thought he was asking if she was currently “in trouble.”  But for purposes of a
motion to suppress, we must view the evidence in the light most favorable to
the trial court’s ruling and give almost total deference to the trial court’s
rulings on questions of historical fact, even if the trial court’s
determination of those facts was not based on an evaluation of credibility and
demeanor.  Amador, 221 S.W.3d at 673; Montanez, 195 S.W.3d at
108–09; Johnson, 68 S.W.3d at 652–53; see Garcia-Cantu,
253 S.W.3d at 241.  And the relevant inquiry is the reasonableness of Trooper
Riggs’s belief that Hamal was lying about her prior arrests.  See Madden v.
State, 242 S.W.3d 504, 508 n.7 (Tex. Crim. App. 2007) (noting factual issue
was not whether defendant was actually speeding, but whether officer had
reasonable belief that defendant was speeding).  The trial court could have
determined, based on the videotape of the stop and Trooper Riggs’s testimony,
that a reasonable officer would have reasonably believed that Hamal clearly
heard the trooper’s question; on the videotape of the stop, Hamal did not seek
clarification of the question, she answered almost it immediately, and nothing
suggests that she had trouble hearing anything else the trooper said.  The
trial court could have also determined from the video and testimony that a
reasonable officer would have reasonably believed that Hamal understood the
trooper’s question as asking if she had ever been arrested and that she denied
it.   As we will explain in more detail in addressing Hamal’s second and third
points below, the record does contain evidence to dispute the trooper’s belief
that she was lying, but under the applicable standard of review and affording
almost total deference to the trial court’s determination of historical facts,
the evidence does not conclusively establish that a reasonable officer would
have concluded that Hamal misunderstood or did not hear the question asked.  See
Amador, 221 S.W.3d at 673; Montanez, 195 S.W.3d at 108–09; Johnson,
68 S.W.3d at 652–53; see also Garcia-Cantu, 253 S.W.3d at 241.  

Consequently,
we hold that the trial court did not err by finding that Trooper Riggs had
reasonable suspicion to continue detaining Hamal based on his observation of
her nervousness when stopped, his belief that she had misrepresented that she
had never been arrested when, in fact, she had nine prior arrests, including
four drug-related arrests, and her lengthy criminal history, including several
(and one very recent) drug-related arrests.[7]  See Morris, 2006
WL 3193724, at *3; Coleman, 188 S.W.3d at 718–19; Simpson, 29
S.W.3d at 329; Powell, 5 S.W.3d at 378–79.  Because the trial court did
not err by denying Hamal’s motion to suppress on this basis, we overrule the
remainder of her first point. 

V.  Requested Jury Instructions

          Hamal
consolidates her second and third points, stating that the trial court erred by
failing to include her fourth and sixth requested jury instructions and an
article 38.23 instruction in the jury charge.  She asserts that she was
entitled to these instructions because the evidence showed that Trooper Riggs
thought she had lied about her criminal history but that she thought she had truthfully
answered the question as she had heard it, thus creating a disputed issue of
fact.

A.
Standard of Review

Appellate
review of error in a jury charge involves a two-step process.  Abdnor v.
State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); see also Sakil v.
State, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009).  Initially, we must
determine whether error occurred, and if it did, we must then evaluate whether
sufficient harm resulted from the error to require reversal.  Abdnor,
871 S.W.2d at 732.  

B. 
Law on Article 38.23 Instructions

Article
38.23(a) of the code of criminal procedure prohibits the admission of evidence
against an accused in a criminal trial if the evidence was obtained in
violation of the Texas or United States constitutions or laws.  Tex. Code Crim.
Proc. Ann. art. 38.23(a) (West 2005).  The statute further provides, 

In any case where the
legal evidence raises an issue hereunder, the jury shall be instructed that if
it believes, or has a reasonable doubt, that the evidence was obtained in
violation of the provisions of this Article, then and in such event, the jury
shall disregard any such evidence so obtained.

 

Id. 

If a
defendant successfully raises a factual dispute over whether evidence was
illegally obtained, inclusion of a properly worded article 38.23 instruction is
mandatory.  Madden, 242 S.W.3d at 510.  To be entitled to the submission
of a jury instruction under article 38.23(a), a defendant must establish that (1)
the evidence heard by the jury raises an issue of fact; (2) the evidence on
that fact is affirmatively contested; and (3) the contested factual issue is
material to the lawfulness of the challenged conduct in obtaining the evidence. 
Id.; cf. Oursbourn v. State, 259 S.W.3d 159, 177 (Tex. Crim. App.
2008).  If there is no dispute regarding the factual basis for the challenged
search or seizure, then the legality of the conduct is determined by the trial
judge alone—as a question of law—and a jury instruction
is inappropriate.  Madden, 242 S.W.3d at 510.  “A fact issue
about whether evidence was legally obtained may be raised ‘from any source, and
the evidence may be strong, weak, contradicted, unimpeached, or unbelievable.’”
Garza v. State, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004) (quoting Wilkerson
v. State, 933 S.W.2d 276, 280 (Tex. App.—Houston [1st Dist.] 1996, pet. ref’d)).


C. 
Disputed Issue of Material Fact Warranted Article 38.23 Instruction

In
this case, whether a disputed issue of fact existed warranting an article 38.23
instruction centers around Trooper Riggs’s question, “Have you ever been in any
trouble for anything?” and whether he was reasonable in believing that Hamal correctly
heard his question and understood it as asking whether she had ever been
arrested.  As we stated above, the trooper’s question was not a model of
clarity.  Not only is it vaguely and broadly worded—using the term “in trouble”
instead of “arrested” or “convicted”—but the videotape of the stop and Trooper
Riggs’s testimony establish that Hamal disputed that she understood what he was
asking her.  When Trooper Riggs informed Hamal that she had lied about having “never
been in trouble and never been arrested,” she immediately responded, “No.  No. 
I said that I am not in any trouble right now. I have been arrested.”  She
further explained, “Well, I didn’t know specifically what you were asking—if I
had been in any trouble recently, or twenty years ago, or five years ago.”  And
she immediately told Corporal Payne upon his arrival that she had misunderstood
Trooper Riggs’s question as asking if she was currently in trouble.  On the
other hand, the videotape shows Trooper Riggs telling her that he thought she
was lying about having ever been arrested, and he also testified at trial that
he thought she was lying:  “The question was clearly asked, and I just felt
like she was avoiding the question.”  Trooper Riggs further testified that
Hamal had told him at the scene that she misunderstood his question.

In Madden,
the court of criminal appeals discussed the circumstances in which an article
38.23 instruction is and is not required.  See 242 S.W.3d at 511–14. 
The court held that a disputed issue of fact existed about whether the
appellant was speeding—the officer’s reason for stopping the appellant—because
the videotape of the stop showed the appellant claiming that he had not been
speeding.  Id. at 508, 511.  Regarding this disputed issue of fact, the
court of criminal appeals approved of an instruction that informed the jurors
that no evidence obtained in violation of the constitutions or laws of the
United States or Texas shall be considered and continued by stating:

You are further instructed
that our law permits the stop and detention of a motorist by a peace officer
without a warrant when the officer has reasonable suspicion to believe that a
traffic offense has been committed. 

 

          . . . . 

 

. . . [I]f you find
from the evidence that, on the occasion in question, Officer Lily did have a
reasonable suspicion to believe that [appellant] was driving at a speed greater
than 55 miles per hour on a portion of the highway with a posted speed limit of
55 miles per hour immediately prior to the stop, then you may consider the
evidence obtained by the officer as a result of the detention.

 

Id. at
508 n.7.  The court of criminal appeals found this instruction “admirable”
because it directed the “jury’s attention to the one historical fact—Officer
Lily’s reasonable belief or ‘suspicion’ that appellant was going faster than 55
m.p.h.—in dispute and tells the jury to decide this fact.”  Id.

In
this case, the factual issue for the jury is not whether Hamal misunderstood
Trooper Riggs’s question as asking whether she was currently in trouble;
rather, the issue is whether Trooper Riggs was reasonable in believing—after
Hamal answered his question and also after she informed him that she had misunderstood
the question—that Hamal had heard and understood what he was asking and had lied
about having ever been arrested.  See id. (“Even police officers may be
mistaken about an [sic] historical fact such as “speeding,” as long as that
mistake was not unreasonable.”).  We believe this is similar to the disputed issue
of fact about whether the appellant was speeding in Madden.  See id.
at 511.   The videotape of the stop, as well as Trooper Riggs’s testimony,
raised this issue of fact, and the evidence on that fact was affirmatively
contested.[8] 
See id.

Furthermore,
the contested fact issue—whether Trooper Riggs reasonably believed that Hamal
had lied to him about her prior arrests—was material to the lawfulness of the
continued detention.  See id. at 510–11.  As we stated above in our
suppression analysis, Hamal’s nervousness at the beginning of the stop and her
past criminal history, without more, could not provide the basis for her
continued detention, and consequently, Trooper Riggs’s reasonable belief that
she was lying about her prior arrests was a necessary fact as part of the
totality of the circumstances to support a reasonable suspicion determination. 
See Jones, 234 F.3d at 242; Davis, 947 S.W.2d at 248; Parker,
297 S.W.3d at 811; Sieffert, 290 S.W.3d at 485.  Had the jury believed
the contrary evidence—that Hamal had misunderstood Trooper Riggs’s question and
had not lied to him about her prior arrests—and believed that Trooper Riggs was
not credible in his testimony—that he thought Hamal was lying, even after she
explained to him that she had misunderstood his question—then the continued
detention would not have been justified.  See Reynolds v. State, 848
S.W.2d 148, 148–49 (Tex. Crim. App. 1993) (“[A]lthough a conclusion that the
officer was mistaken would not affect the legitimacy of his stopping appellant,
a conclusion that [the officer] was lying would.”).  

Consequently,
because the evidence at trial showed a factual dispute as to whether Trooper
Riggs’s belief that Hamal had understood his question and was lying about
having been arrested in the past was reasonable, and because this factual
dispute was material to the determination of reasonable suspicion to continue
detaining Hamal for a canine sniff, we hold that she was entitled to a jury
instruction on article 38.23 and that the trial court erred by denying her
request for that instruction.  See Tex. Code Crim. Proc. Ann. art.
38.23; Madden, 242 S.W.3d at 513.

D. 
Harm

Having
found error, we must now determine whether Hamal was harmed by the trial court’s
failure to include an article 38.23 instruction in the jury charge.  Hamal
objected to the charge and provided the trial court with several proposed
charges, the fourth and sixth of which are relevant here.  Her fourth proposed
charge begins by restating the first paragraph of article 38.23(a), but the
remainder of the proposed charge discusses probable cause and does not set out
the factual issue for the jury to decide.  See Tex. Code Crim. Proc.
Ann. art. 38.23(a); Madden, 242 S.W.3d at 508 n.7; see also Holmes v.
State, 248 S.W.3d 194, 199–200 (Tex. Crim. App. 2008) (explaining that if
contested fact issue exists, jury should be instructed about the conflict
considering the specific historical fact that is material to the legality of
obtaining the evidence).  Hamal’s sixth proposed charge instructs that the
factual dispute is 

whether the accused
intentionally made a false response to Officer Payne’s[[9]]
question, “Have you ever been in trouble[.]” . . . 

 

Now therefore,
bearing in mind the foregoing instruction, if you find from the evidence beyond
a reasonable doubt that the accused’s response to the question, “Have you ever
been in trouble[,]” was an intentional attempt by the accused to mislead the
officer as to her prior criminal record so as to raise a reasonable suspicion
of contraband being in the accused’s vehicle, then you may consider the
evidence obtained by the search of accused’s vehicle.

 

The
proposed instruction did not include the legal background for the issue, and it
did not correctly set out the factual issue for the jury to decide.  See Tex.
Code Crim. Proc. Ann. art. 38.23; Riley v. State, 830 S.W.2d 584, 586–87
(Tex. Crim. App. 1992) (“[Article] 36.14 requires the judge to provide the jury
with both an abstract statement of the law and an application of that abstract
statement to the evidence in the case.”).  Consequently, Hamal failed to
present a proper requested instruction.

When
a defendant fails to present a proper requested instruction, any error in the
charge “should be reviewed only for ‘egregious harm’ under Almanza.” Madden,
242 S.W.3d at 513; see Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985) (op. on reh=g);
see also Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006); Allen v.
State, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); Hutch v. State,
922 S.W.2d 166, 171 (Tex. Crim. App. 1996).  Egregious harm is the type and
level of harm that affects the very basis of the case, deprives the defendant
of a valuable right, or vitally affects a defensive theory.  Allen, 253
S.W.3d at 264 & n.15; Olivas v. State, 202 S.W.3d 137, 144, 149
(Tex. Crim. App. 2006); Almanza, 686 S.W.2d at 172.

In
making an egregious harm determination, Athe
actual degree of harm must be assayed in light of the entire jury charge, the
state of the evidence, including the contested issues and weight of probative
evidence, the argument of counsel and any other relevant information revealed
by the record of the trial as a whole.@  Almanza,
686 S.W.2d at 171; see generally Hutch, 922 S.W.2d at 172B74. 
The purpose of this review is to illuminate the actual, not just theoretical,
harm to the accused.  Almanza, 686 S.W.2d at 174.  Egregious harm is a
difficult standard that must be determined on a case-by-case basis.  Ellison
v. State, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); Hutch, 922
S.W.2d at 171. 

Here,
regarding the jury instructions, because the jury was not provided an article
38.23 instruction, it was allowed to consider evidence obtained as a result of
Hamal’s continued detention without first determining a fact issue related to
that detention.  If properly instructed, the jury would have been required to
disregard the evidence obtained from the continued detention if it believed
that Trooper Riggs was not reasonable in believing that Hamal correctly heard
his question and interpreted it as asking whether she had ever been arrested.  See
Hutch, 922 S.W.2d at 172–73; Reynolds, 848 S.W.2d at 149.

Regarding
the state of the evidence, whether Hamal understood Trooper Riggs’s question
and lied about having been arrested was a contested issue at trial.  And as we
have stated, if Trooper Riggs was unreasonable in believing that Hamal had lied
about her prior arrests, then he could not have had reasonable suspicion to
continue the detention.  See Davis, 947 S.W.2d at 248; Parker,
297 S.W.3d at 811; Sieffert, 290 S.W.3d at 485.  

Turning
to the arguments of counsel, the State argued during opening arguments that Trooper
Riggs’s question was clear and simple, allowing him to determine that Hamal had
lied to him; defense counsel argued in both opening and closing arguments that
the question asked was ambiguous and open-ended and that Hamal did not
understand it.  

Given
this record, we conclude that the trial court’s failure to provide an article
38.23 instruction created such harm that Hamal did not have a fair and
impartial trial.  See Almanza, 686 S.W.2d at 171; see also Tex.
Code Crim. Proc. Ann. art. 36.19; Allen, 253 S.W.3d at 264; Hutch,
922 S.W.2d at 171.  We sustain Hamal’s second and third points.

VI.  Conclusion

          Having
sustained Hamal’s second and third points, we reverse the trial court’s judgment
and remand to the trial court for a new trial. 

 

SUE WALKER
JUSTICE

 

 

PANEL: 
GARDNER, WALKER, and MCCOY, JJ.

 

MCCOY,
J. concurs without opinion.

 

PUBLISH

 

DELIVERED:  September 22,
2011









[1]Hamal argues that the erroneous
admission of Corporal Payne’s testimony about the canine sniff was one reason
why the trial court should have granted her motion to suppress.  She did not
urge this ground as part of her motion to suppress or in her motion for new
trial based on the denial of her motion to suppress.  Because we hold that the
trial court did not abuse its discretion by overruling her rule 702 objection
to this testimony, however, we need not address whether this was a proper basis
for her motion to suppress.





[2]The recording shows that
both cars pulled off the highway at the 2:35 time stamp.  For clarity, we treat
this time as 0:00 and outline all events thereafter as occurring at an elapsed
time from this point.





[3]After exiting her car,
Hamal joined Trooper Riggs on the shoulder of the highway.





[4]At that point, Trooper
Riggs walked away from Hamal and looked at the windshield of her car.  Hamal
and Trooper Riggs briefly discussed the location of Hamal’s vehicle
registration sticker.  Trooper Riggs shone his flashlight into the interior of
Hamal’s vehicle as he walked back toward Hamal.





[5]Although Trooper Riggs
testified that he did not consider Hamal’s criminal record, reasonable
suspicion is an objective standard that disregards any subjective intent of the
officer making the stop and looks solely to whether an objective basis for the
stop exists.  See Ford, 158 S.W.3d at 492; Fernandez v. State,
306 S.W.3d 354, 357 (Tex. App.—Fort Worth 2010, no pet.); State v. Patterson,
291 S.W.3d 121, 123 (Tex. App.—Amarillo 2009, no pet.) (“[T]he subjective
reasons uttered by the officer to legitimize the stop have no bearing on the
outcome if the totality of the circumstances nonetheless would lead a police
officer to reasonably suspect that crime is afoot.”) (citing Garcia v. State,
43 S.W.3d 527, 530 (Tex. Crim. App. 2001)).





[6]Hamal argues that the
reason for the initial detention had concluded when Trooper Riggs told her that
his ticket machine was “running kind of slow”; she asserts that her continued
detention after that point was not warranted because it was not based on
reasonable suspicion.  But because Trooper Riggs learned of Hamal’s criminal
history prior to this point, and because we hold that the trial court did not
err by finding that the trooper possessed reasonable suspicion to continue the
detention at that point, this reasonable suspicion provided the basis for her
continued detention.  See Mohmed, 977 S.W.2d at 628.





[7]Hamal also argues that
Trooper Riggs’s “inarticulate hunch that [she] ‘may be hiding something’” was
insufficient to support reasonable suspicion that she was engaged in illegal
activity.  However, unlike in the cases cited by Hamal, see Davis, 947
S.W.2d at 245; Sieffert, 290 S.W.3d at 487 (driving in high crime area
and nervousness supported nothing more than hunch); Wolf v. State, 137
S.W.3d 797, 804 (Tex. App.—Waco 2004, no pet.) (nervousness and being overly
cooperative did not support inference of illegal activity), when the evidence
in this case is viewed in an objective fashion, Hamal’s nervousness, her lying
about her criminal history, and the revelation that she had four drug-related
arrests, one of which occurred just seven months prior, supplied the
articulable facts to support reasonable suspicion that she may be hiding
drugs.  See Morris, 2006 WL 3193724, at *3; Powell, 5 S.W.3d at
378.





[8]The State argues that no
evidence was presented at trial that Hamal misunderstood the question to raise
a disputed issue of fact—“[t]here was a dispute as to [Hamal]’s interpretation
of the question only at the scene and not in any evidence presented at
trial.”  [Emphasis added.]  But the videotape of the stop was admitted at trial
and played for the jury.  Both the videotape of the stop and Trooper Riggs’s
testimony raised the disputed issue of fact.  See id. at 513 (explaining
that cross-examiner’s questions do not create conflicts in the evidence but
witness’s answers to those questions might, and relying on videotape of stop as
creating an issue of fact).





[9]Hamal points out on appeal
that the jury instruction incorrectly stated that Corporal Payne, rather than
Trooper Riggs, asked the question.